Commonwealth *v.* Elliott, Appellant.

Argued April 10, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

*James E. Snyder,* with him *Graham R. Hurd, Raymond Pace Alexander,* and *Robert N. C. Nix,* for appellant.

*Carl B. Shelley,* District Attorney, with him *Richard D. Walker,* Assistant District Attorney, for appellee.

OPINION BY MR. CHIEF JUSTICE MAXEY, May 22, 1944:

The defendant below pleaded guilty to an indictment charging murder. The court en banc, after taking testimony, adjudged him guilty of murder in the first degree and imposed the death penalty. He took this appeal, contending that the evidence does not support a finding of first degree murder, and that the penalty of death is not a just one.

The facts are as follows: At about two o'clock a.m., on April 13, 1943, the defendant entered the third floor apartments at 672 Verbeke Street, Harrisburg, which were occupied by Lucious Baker. Some sort of gambling game was in progress in the front apartment. The defendant entered Baker's home after taking the top window out. He went there to steal. In his confession he said he "couldn't find nothing. No money there at all." He added: "When I went in I had a pocket knife. I opened it up and left it in my pocket. I got ready to leave, and Baker coughed . . . He walked in and turned the light on . . . He asked me what I was doing there" and "I told him" and "then he said he didn't have no money and he said—why should I want to rob him. Then I told him I was going to leave. He told me—no, I wasn't. He said he wouldn't put the cops on me, but I wouldn't rob anybody else." . . . "After he finished

talking to me, he rushed me. I hit him on the head with a blackjack." . . . "We both fell on the bed." . . . "He was choking me. All this time I was on top of him. He went to put his right hand in his pocket. With his left hand he was choking me. I grabbed his right hand and knocked the knife to the floor." . . . "Then I went into my right hand coat pocket. The knife was already open. I went to stick him with the knife but I couldn't at first." . . . "Then I went to stick him again. I stuck him a couple of times." . . . "I seen some blood." . . . "Then he grabbed me again." . . . "I stuck him again." . . . "He fell." . . . "His head hit the floor very hard." . . . "A big pool of blood came out of his mouth." . . . "I felt his pulse and he was dead."

After the appellant had left the apartment he remembered that the blackjack with which he had struck the decedent was still at the scene of the crime and that it had his finger-prints upon it. He returned and secured the blackjack and a bag of money and two watches. He looked through the clothing of the decedent and found two wallets, which he also appropriated. He then went home and destroyed the wallet, the blackjack and one watch. He retained one watch and all the cash, which amounted to approximately $300.

The Act of June 24, 1939, P. L. 872, paragraph 701; 18 PS 4701, provides, inter alia, as follows: "All murders . . . which shall be committed in the perpetration of, or attempting to perpetrate any arson, rape, robbery, burglary, or kidnapping, shall be murder in the first degree."

The evidence in this case justified the court below in adjudging this defendant guilty of murder in the first degree. Appellant argues that his attempt to rob was completed before the killing took place, that there was a break in the chain of events between that act and the killing, and that he was leaving the scene when Baker accosted him and attempted to overpower him, and that since he had no intention of killing Baker, he is not guilty of murder in the first degree. The essence

of this argument is that a burglar sheds his felonious status as soon as he fails to obtain the loot he is seeking and starts to leave the premises, and if after that moment he kills the householder or any member of the latter's family, he is not guilty of murder in the first degree. This is not the law of this Commonwealth. We said in *Commonwealth v. Kelly,* 333 Pa. 280, 287, 4 A. 2d 805: "To *this* Commonwealth one must answer as a malicious criminal for any fatal injury he here causes a human being by anything done by him intentionally or unintentionally during the commission or attempted commission of any of the specified felonies." What we said in the later case of *Commonwealth v. Kelly,* 337 Pa. 171, 10 A. 2d 431, is applicable to this case: "There is unity of criminal action between the planning of a crime, its execution or attempted execution and the flight from the scene. There may be between the commission of a robbery and the later commission by the same felon, of a homicide, such *dis*unity in time, place and purpose as to make the two felonies distinct, but we have no such situation here."

We find in this case no such "break in the chain of events between the burglary and the homicidal act" as to make the quoted section of our murder statute inapplicable. This court declared in *Commonwealth v. Doris,* 287 Pa. 547, 551, 135 A. 313, that "whether the act of departing is a continuous part of the attempted or accomplished crime is for the jury: *Commonwealth v. Major,* 198 Pa. 290, 47 A. 741." In the instant case the court en banc exercised jury functions in determining that fact.

The argument that the defendant killed Baker while he, the defendant, was exercising the right of self-defense against Baker's attack is fantastic. When any person enters a house to burglarize it he leaves his right of self-defense outside. Those who perpetrate or attempt to perpetrate any of the felonies named in the statute above quoted have no right of self-defense against their intended victims when the latter take appropriate meas-

ures to repel their aggressions or to overpower them at the time and place of their felonious acts. In *Commonwealth v. Le Grand et al.*, 336 Pa. 511, 518, 9 A. 2d 896, we said: "Burglary is one of the most detestable crimes known to the law. Blackstone (Book IV, sec. 223) characterizes common law burglary as 'a very heinous offense.' . . . Every burglar is a potential assassin and when his felonious purpose encounters human opposition his *intent to steal* becomes an *intent to kill* and any weapon he finds at hand becomes a weapon of *murder*."

Our conclusion is that the facts of this homicide justified also the sentence imposed. The criminal record of this appellant, which was offered in evidence, showing that he had been convicted in 1936 of larceny from the person, that in 1937 he pleaded guilty to charges of felonious entry, larceny and receiving, and that in 1939 he was convicted of larceny, larceny by bailee and receiving stolen goods, indicates that by nature he was a felon. In *Commonwealth v. Harris*, 314 Pa. 81, 171 A. 279, this court said: "If the penalty [of death] is warranted by the record, the sentence must stand. Any further plea in mitigation must be to the pardoning board." A killing in the perpetration or attempted perpetration of a burglary has been termed by the legislature as murder in the first degree. When as in the instant case the defendant pleads guilty to murder and it becomes the duty of the court below to fix the degree of murder and to choose the appropriate penalty, this court will not interfere with the action of that court unless there has been an abuse of discretion, as we pointed out in *Commonwealth v. Sterling et al.*, 314 Pa. 76, 170 A. 258. We find no such abuse of discretion in this case. The elements of first degree murder are present and there are no circumstances brought to our attention to convince us that the penalty imposed was not appropriate and just.

Judgment is affirmed and the record is remitted so that the sentence may be executed.