Commonwealth *v.* Pepperman et al., Appellants.

Argued November 26, 1945. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Elmer D. Loose,* for appellants.

*Burton R. Laub,* District Attorney, for appellee.

OPINION BY MR. JUSTICE JONES, January 8, 1946:
The appellants, under advice of counsel, pleaded guilty to an indictment which charged them with the

murder of Joseph B. Campbell in Erie County, Pennsylvania, on August 1, 1945. For the purpose of determining the degree of the murder and of imposing appropriate sentence, the trial court, sitting en banc, heard testimony for the Commonwealth and for the defendants, each of the latter having taken the stand as a witness in his own behalf. Both of them testified freely and fully, confirming in detail written confessions which they had respectively made and signed and which had been introduced in evidence against them without objection.

The learned court below adjudged the murder to be in the first degree and thereupon fixed death as the penalty to which it duly sentenced the defendants. In the legal situation which obtained by virtue of the defendants' pleas of guilty and the trial court's determination that the murder was in the first degree, the power to fix the sentence, as between death or imprisonment for life, resided in the court: Act of June 24, 1939, P. L. 872, Sec. 701, 18 P.S. § 4701.

The defendants have severally appealed and assign here for error the action of the court below in sentencing them to death rather than to life imprisonment. Each appellant has filed two assignments of error. All assignments, however, raise but the single question as to the propriety of the sentences in the circumstances.

That the homicide was murder in the first degree is not only not disputed by the appellants but is conceded by their counsel. However, despite the defendants' pleas and the limited scope of their sole exception, as the offense whereof they were adjudged guilty is a capital one, we have carefully examined the entire record and find that it contains all of the essential ingredients of murder in the first degree. It is clear beyond a shadow of doubt that the deceased's death resulted directly from violence willfully inflicted upon him by the defendants while they were engaged in the perpetration of a robbery and burglary. The conclusion of the trial court that the murder was in the first degree was therefore legally warranted: Act of 1939, loc. cit. supra.

As a consequence, the only question involved on the instant appeals is whether the court below abused its discretion in fixing death as the penalty for the crime and in sentencing the defendants accordingly.

In support of their contention that the sentence should have been imprisonment for life, appellants' counsel urges upon us (1) that, when the defendants went to their victim's home on the evening of the killing for the intended purpose of stealing his automobile, they were not armed with any lethal weapon wherefore they could not have had an *actual* intent to take life, and (2) that, from the time defendants were boys, they were without parental training and religious instruction wherefore they lacked the moral responsibility naturally to be expected of normal persons.

1. The evidence shows that, after the defendants had brutally set upon Mr. Campbell with their fists when, at their deceitful solicitation, he had undertaken to befriend them, they laid hand to a bedroom slipper lying nearby. With that, they beat him about his face and head, inflicting numerous wounds from which he bled profusely and causing fractures of his skull in two places. That these injuries produced the deceased's death is irrefutable. As to the character of the weapon used: the pathologist who performed the autopsy upon the deceased and who appeared as a witness for the Commonwealth, when asked whether the slipper "could have caused the injuries . . . which resulted in death", answered that, in his opinion, ". . . it could because, while this is a composition heel, it is hard and considerable force can be exerted with such an instrument, especially with a whiplash action of a flexible sole." The fact that the defendants readily made use of such a weapon and therewith mortally wounded their victim repudiates any supposed extenuating implication drawn from the fact that the defendants had gone unarmed to the deceased's residence.

In *Commonwealth v. Le Grand et al.*, 336 Pa. 511, 9 A. 2d 896, the defendants likewise carried no weapons

with them when they entered the store which they intended to burglarize. But, once inside the premises, they found a cuspidor with which they inflicted fatal injuries upon the night watchman. On pleas of guilty, the trial court adjudged the murder to be first degree and sentenced the defendants to death. The case came here on appeal by the defendants from the dismissal of their petition for leave to appeal *nunc pro tunc*. What this Court said (pp. 517-518), in affirming, is peculiarly apposite here in pertinent connection: "There was no abuse of discretion in imposing the sentences now under review. The evidence establishes that these defendants not only committed a murder in the perpetration of a burglary but also that they intended to kill their victim and that the killing was atrocious and brutal. It is true that they carried no weapons into the store but when their victim was in their power they deliberately beat him to death with a heavy cuspidor. *An intentional killing may be and often is carried out with weapons not ordinarily termed 'deadly'.* Such weapons as revolvers are called 'deadly' because their normal use is to cause death. But an ax, a baseball bat, an iron bar, or, as in this case, a heavy cuspidor, may all be so used as to cause death. When one beats a prostrate man in the head with a heavy cuspidor, it is a legitimate inference that he intends to kill that man." (Emphasis supplied). The inference to like effect which the learned court below drew in the instant case was no less legitimate even though the deadly weapon used by the defendants was no more than a bedroom slipper.

2. It is true that the defendants, whose histories closely parallel each other, had spent considerable portions of their lives in confinement from the time they were fourteen years old. Their incarcerations, first in correctional and later in penal institutions, totalled ten years in the case of Pepperman and seven years in the case of West up to the time of the murder, Pepperman then being twenty-nine and West twenty-seven years old.

There is nothing in the record, however, to warrant a conclusion that either of the defendants lacked the opportunity of parental training, education or religious instruction. The extent of their schooling was comparable to the completion of eighth grade work. Nor is there a word of testimony that either of them is subnormal mentally. Cf. *Commonwealth v. Howell,* 338 Pa. 577, 579, 13 A. 2d 521; and *Commonwealth v. Hawk,* 328 Pa. 417, 421, 196 A. 5. On the contrary, the defendants' answers to questions while on the witness stand at the hearing below indicate an alert intelligence and an ability to express themselves with discriminating accuracy. See *Commonwealth v. Frisbie,* 342 Pa. 177, 181, 20 A. 2d 285.

On the basis of the record now before us we fail to perceive how we could justifiably hold that the trial court had abused its discretion in sentencing the defendants to death. The mitigating circumstances in favor of an offender who has acted from emotional stress and who has a prior record of law-abiding nature and habits, which is sufficient to justify a court "in fixing the lesser of the two penalties" *(Commonwealth v. Sterling,* 314 Pa. 76, 78, 170 A. 258), are not present in the instant case. Cf. *Commonwealth v. Irelan,* 341 Pa. 43, 46-7, 17 A. 2d 897; *Commonwealth v. Garramone,* 307 Pa. 507, 514-515, 161 A. 733. Each of the defendants has a prior and persistent criminal record, and the killing was not only brutal but wanton. In the words of the court below, "The killing of the deceased was unnecessary even in order to make possible the robbery and burglary committed." No circumstances have been brought to our attention that could possibly justify us in holding that the court below had abused its discretion when it fixed death as the penalty for the defendants' crime.

The judgments are affirmed and the record remitted for execution of the sentences.