379 A.2d 1335

**COMMONWEALTH of Pennsylvania**

v.

**Alice Irene ALLEN, Appellant.**

Supreme Court of Pennsylvania.

Argued May 4, 1976.

Decided Dec. 1, 1977.

Philip D. Freedman, Asst. Public Defender, Harrisburg, for appellant.

Marion E. MacIntyre, Second Asst. Dist. Atty., Reid H. Heingarten, Harrisburg, for appellee.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

NIX, Justice.

On November 9, 1973, a man and a woman robbed a tavern known as Louie's Dream House located in Harrisburg. The woman was armed with a pistol and the man had a sawed-off shotgun. During the course of the robbery, the

male intruder shot a patron in the chest killing the victim instantly. The pair then emptied the cash register and fled from the tavern. Appellant conceded that she was the female participant in the robbery and after trial, was found guilty of murder of the first degree and robbery. This is a direct appeal from the murder conviction; no appeal has been taken from the robbery conviction.[1]

The single issue is whether appellant could properly have been held criminally responsible for the death of the victim, Ms. Vivian Proctor, where it is admitted that appellant did not fire the shot which caused the death. It is argued that under the 1972 Crimes Code, Dec. 6, 1972, P.L. 1482, No. 334, § 1 et seq., 18 Pa.C.S.A. § 101 et seq., one cannot be held guilty for a criminal homicide, Section 2501 (and therefore also cannot be held accountable for murder, Section 2502) where that person does not actually *cause* the death. In short, appellant's argument is premised upon the view that the 1972 Crimes Code eliminated vicarious responsibility for criminal homicides. We disagree and for the reasons set forth below affirm the judgment of sentence.

Appellant frames her argument as an assault on the felony-murder rule and devotes a great deal of her brief to an exhaustive history of that rule. While we applaud the scholarship in that regard it regrettably fails to provide illumination upon the issue she has actually raised in this appeal. Appellant has failed to distinguish between the common law concept of felony-murder, which provides a basis for implying malice, and the requirements for accomplice liability in criminal law. As we noted in *Commonwealth v. Redline*, 391 Pa. 486, 495, 137 A.2d 472, 476 (1958), "In adjudging a felony-murder, it is to be remembered at all times that the thing which is imputed to a felon for a killing incidental to his felony is *malice* and *not the act of killing*." This doctrine may be applicable whenever a death occurs during the perpetration of or an attempt to perpetrate a

1. Jurisdiction is vested in this Court under the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, No. 223, art. II, 202(1); 17 P.S. § 211.202(1) (Supp. 1976–77).

felony, whether or not the accused actually inflicted the mortal wound. Restated, the felony-murder concept was a judgment by our courts at common law that the willingness to participate in conduct amounting to a felony exhibited the recklessness of consequences, the callous disregard and the hardness of heart which evidenced a malicious state of mind.[2] This reasoning was applicable to the actual slayer as well as to those who participated in the felony with him.[3]

**2.** Since this rule has provided a basis for constructively inferring malice even in the case of an accidental or unintentional killing, it has been subjected to some harsh criticism. *Commonwealth ex rel. Smith v. Myers*, 438 Pa. 218, 261 A.2d 550 (1970). The criticism is more impressive where the underlying felony is one which does *not* constitute a serious threat to life. However, where the underlying felony is robbery this Court has been adamant in its refusal to modify the doctrine. *Commonwealth v. Yuknavich*, 448 Pa. 502, 295 A.2d 290 (1972). In *Yuknavich*, we explained the reason for our unwillingness to alter the principle where the death occurred during the course of a robbery or attempted robbery as follows:

"The nature of the felony in this case is such that it should be obvious to anyone about to embark on such a venture that the lives of the victims may be sacrificed in accomplishing the end. A reasonable man can be properly charged with the knowledge that the natural and probable consequences of such an act may well result in death or grievous bodily harm to those involved. It is not unrealistic to ascribe to one who willfully engages in a plan to commit armed robbery, a wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, or a mind regardless of social duty. Thus, when dealing with the felony of armed robbery we are merely saying that it is the same malice that is required for common law murder." *Id.*, 448 Pa. at 508, 295 A.2d at 293.

**3.** In *Yuknavich*, we explained the difference between the common law principle of felony-murder and the statutory concept as follows:

"The rule in Pennsylvania involves two distinct areas. First, the relevant statutory law imputes the malice necessary for first degree murder to a felon who causes the death of another person during the perpetration of arson, rape, robbery, burglary, or kidnapping. However, since this statutory classification merely categorizes murder into two degrees, it is to the common law that one must look for the definition of murder. As enunciated in the landmark case of *Commonwealth v. Drum*, 58 Pa. 9, 15 (1868), '[t]he distinguishing criterion of murder is malice aforethought.' With this 'criterion' as the basis, the doctrine of felony-murder became firmly imbedded in the common law. As applied in Pennsylvania, common law felony-murder 'is a means of imputing malice where it may not exist expressly. Under this rule, the malice necessary to make a killing, even an accidental one, murder,

■■ Appellant, no doubt in good faith, has mislabelled the dispositive issue as being that of causation. While the application of the felony murder doctrine often presents novel and complex questions of causation, *see Commonwealth v. Redline, supra*, such a question is not present in the instant case. In the *Redline* type of case the causation problem arises, because *neither* co-felon committed the lethal act, although the lethal act arose out of the commission of the underlying felony.[4] In the case at bar, the appellant's companion in the robbery clearly inflicted the mortal wound, so it is important to recognize that the controlling issue as to

is constructively inferred from the malice incident to the perpetration of the initial felony.' *Commonwealth ex rel. Smith v. Myers,* 438 Pa. 218, 224–25, 261 A.2d 550, 553 (1970). Therefore, in analyzing a homicide committed in the perpetration of or attempt to perpetrate a felony 'the basic determination of the fact of murder is to be made according to the rules of the common law, including the felony-murder theory of imputed malice, and, upon a finding of guilt, the degree statute automatically raises the murder to first degree if it happened, inter alia, to have been committed in the perpetration of arson, rape, robbery, burglary or kidnapping.' *Commonwealth v. Redline,* 391 Pa. 486, 495, 137 A.2d 472, 476 (1958) (citation omitted)."

*Id.,* 448 Pa. at 506–07, 295 A.3d at 292.

In both common law and statutory felony-murder, our concern is with imputing the requisite malice and not with a determination of the causal relationship between the conduct and the death.

4. In considering this question of causation, this Court rejected the tort "but for" theory as being too remote a basis upon which to predicate criminal responsibility. *Commonwealth v. Redline, supra.* In *Redline,* we repudiated the reasoning in *Commonwealth v. Thomas,* 382 Pa. 639, 117 A.2d 204 (1955) and *Commonwealth v. Almeida,* 362 Pa. 596, 68 A.2d 595 (1949). In *Thomas* and *Almeida* we had indicated that a felon could be held responsible for a death caused by police or a victim resisting the commission of the felony. The rationale for both of these decisions was based upon the view that the death would not have occurred "but for" the attempt to commit the underlying felony. In essence, our holding in *Redline* stands for the proposition that the mere willingness to commit the underlying felony would not result in criminal liability for a death that was a "coincidence" but not a "consequence" of the felony. *Commonwealth v. Redline, supra* 391 Pa. at 495, 137 A.2d at 476. *See also, Commonwealth ex rel. Smith v. Myers,* 438 Pa. 218, 261 A.2d 550 (1970). Thus, where there is a single perpetrator of the crime it must be determined that some act of his was the direct cause of the death, and it is not sufficient to show his commission of the underlying felony alone.

appellant's criminal liability for the killing is not causation but accomplice liability. It is appellant's failure to distinguish between causation and accomplice liability which has created difficulty in this case.[5] The law of this jurisdiction governing an accomplice's liability for a murder committed by his or her principal is firmly established. Where others were acting in concert with the slayer, their responsibility for a resulting death under our cases has been dependent upon proof of the conspiratorial design to commit the underlying felony and a showing that the act by one of the confederates causing death was in furtherance of that criminal plan.

"  .   .   . in order to convict for felony-murder, *the killing must have been done by the defendant or by an accomplice or confederate or by one acting in furtherance of the felonious undertaking.*" *Commonwealth v. Redline, supra* 391 Pa. at 496, 137 A.2d at 476. (Emphasis in original).

*See Commonwealth v. Sampson,* 445 Pa. 558, 285 A.2d 480 (1971); *Commonwealth v. Moore,* 443 Pa. 364, 279 A.2d 179 (1971); *Commonwealth v. Williams,* 443 Pa. 85, 277 A.2d 781 (1971); *Commonwealth ex rel. Smith v. Myers, supra ; Commonwealth v. Wooding,* 355 Pa. 555, 50 A.2d 328 (1947); *Commonwealth v. Pepperman,* 353 Pa. 373, 45 A.2d 35 (1946); *Commonwealth v. Elliott,* 349 Pa. 488, 37 A.2d 582 (1944); *Commonwealth v. Frisbie,* 342 Pa. 177, 20 A.2d 285 (1941); *Commonwealth v. Guida,* 341 Pa. 305, 19 A.2d 98

5.  Clarification is found in a widely-used hornbook on criminal law, wherein the authors explain this distinction as follows:
    "*Many of the felony-murder cases involve co-felons, only one of whom* accidentally or *intentionally fires the fatal shot.* That person is of course liable for intent-to-kill murder if the shot is fired with intent to kill or of felony murder if it is fired accidentally in the commission of the felony and death is foreseeable. Are his co-felons also liable? *This is not so much a matter of felony murder as a matter of parties to crime*—the problem of the responsibility of one criminal (A) for the conduct of a fellow-criminal (B) who, in the process of committing or attempting the agreed-upon crime, commits another crime." W. LaFave & A. Scott, Criminal Law § 71, at 553 (1973) (emphasis added). (footnote omitted).

(1941); *Commonwealth v. Kelly,* 333 Pa. 280, 4 A.2d 805 (1939); *Commonwealth v. Stelma,* 327 Pa. 317, 192 A. 906 (1937); *Commonwealth v. Shawell and England,* 325 Pa. 497, 191 A. 17 (1937); *Commonwealth v. Bruno,* 316 Pa. 394, 175 A. 518 (1934); *Commonwealth v. Sterling,* 314 Pa. 76, 170 A. 258 (1934); *Commonwealth v. Crow,* 303 Pa. 91, 154 A. 283 (1931); *Commonwealth v. Flood,* 302 Pa. 190, 153 A. 152 (1930); *Commonwealth v. Tauza,* 300 Pa. 375, 150 A. 649 (1930); *Commonwealth v. Doris,* 287 Pa. 547, 135 A. 313 (1926); *Commonwealth v. Lawrence,* 282 Pa. 128, 127 A. 465 (1925); *Commonwealth v. McManus,* 282 Pa. 25, 127 A. 316 (1925); *Commonwealth v. Carelli,* 281 Pa. 602, 127 A. 305 (1925); *Commonwealth v. Lessner,* 274 Pa. 108, 118 A. 24 (1922); *Commonwealth v. Grether,* 204 Pa. 203, 53 A. 753 (1902); *Commonwealth v. Major,* 198 Pa. 290, 47 A. 741 (1901). It is this body of law which applies to the instant case.

It is virtually conceded by appellant that under prior law she would be held criminally responsible for the death of the victim. But appellant urges that the 1972 Code changes the aforementioned principles of prior law. We do not agree.

In resolving this question under the 1972 Code we first must consider Section 306 which sets forth those circumstances when an accused will be held accountable for the actions of another. Since murder is an offense which requires a particular result, i.e., the death, as an element, subsection (d) of that section is applicable. That subsection provides:

"(d) Culpability of accomplice. When causing a particular result is an element of an offense, an accomplice in the conduct causing such result is an accomplice in the commission of that offense, *if he acts with the kind of culpability,* if any, with respect to that result *that is sufficient for the commission of the offense."* (emphasis added).

To ascertain the "kind of culpability" required by murder of the first degree we must look to Section 2502(a) which defines that offense. Section 2502(a) provides:

"(a) Murder of the first degree. A criminal homicide constitutes murder of the first degree when it is committed by means of poison, or by lying in wait, or by any other kind of willful, deliberate, and premeditated killing. A criminal homicide constitutes murder of the first degree if the actor is engaged in *or is an accomplice* in the commission of, or an attempt to commit, or flight after committing, or attempting to commit robbery, rape, or deviate sexual intercourse by force or threat of force, arson, burglary, or kidnapping." (emphasis added).

When we read Section 2502(a) and (b)[6] together, it becomes apparent that the Legislature followed the same pattern as that used in the drafting of the previous murder section found at Section 701 of the 1939 Code, June 24, 1939, P.L. 872, § 701, 18 P.S. § 4701. First, Section 2502 merely distinguishes between the degrees of murder[7] but does not attempt to define murder itself. Further, first degree murder is divided into two basic categories. The first type of killing constituting murder of the first degree is where it is willful, deliberate and premeditated. The second type of killing which constitutes first degree murder is where the death results during the course of one of the enumerated felonies. Here again the pattern followed is the same as that in former Section 701 with the only difference being the addition of the enumerated felony of deviate sexual intercourse by force. This virtual adoption of the former Section 701 provides the clearest possible indication of a legislative intent to incorporate the existing law of murder.[8]

6.  "(b) Murder of the second degree. All other kinds of murder shall be murder of the second degree. Murder of the second degree is a felony of the first degree."

7.  This section has been subsequently amended to provide three degrees of murder. 1974, March 25, P.L. 213, No. 46, § 4, 18 Pa.C.S.A. § 2502 (Supp. 1977–78). Under this amended section, a murder occurring during a felony is described as murder of the second degree.

8.  In his discussion of Section 2502, Jarvis observes:

174

Moreover, there is no legislative history or commentary indicating any intention to modify our existing concepts of accomplice liability in felony-murders. The abolition of the application of the felony-murder rule to co-felons who do not, in fact, cause the death would have constituted a startling departure from established Pennsylvania law and is not the type of change that would be expected to be made without comment.

■ Appellant bases her view primarily upon the fact that the 1972 Code introduces the discussion of murder by first defining the generic crime of criminal homicide. *See* Section 2501(a).[9] Since Section 2501 follows Section 210.1 of the Model Penal Code (Proposed Official Draft 1962), it is argued that that fact should be construed as a determination by our Legislature to follow the decision of the drafters of the Model Code to restrict felony-murder to the actual slayer.[10] The weakness of this argument is that although

"This section is in accordance with the previous murder statute found at § 701 of the Penal Code (18 P.S. 4701). However, the language has been simplified."
Jarvis, Pennsylvania Crimes Code and Criminal Law, Law and Commentary, 1974.

9. Section 2501(a) provides:
   "(a) Offense defined. A person is guilty of criminal homicide if he intentionally, knowingly, recklessly or negligently causes the death of another human being."

10. The Comment to the Tentative Draft of the section defining murder, *see*, Tentative Draft No. 9, p. 28, indicates that the drafters intended the felony-murder doctrine to be restricted as a basis for establishing the criminality of homicide to a rebuttable presumption of recklessness from the fact that the actor was participating in an inherently dangerous-to-life felony. There is, however, no expression of an intention in that discussion of limiting criminal responsibility in felony-murder to the actual slayer. We do concede, however, that a reading of Article 210 in toto might well support the conclusion that the 210.1 definition of criminal homicide is intended to be the sole and mandatory definition that must obtain when construing the subsequent types of homicide set forth thereafter. Accepting such a conclusion, there would be a basis for reasoning that only the one who *actually caused the death* could be criminally responsible of any type of criminal homicide. However, for our purposes we need not here decide whether the drafters of the Model Code intended to limit vicarious liability in this area since it is our decision that our Legislature did not intend to follow the Model Code with regard to

the Legislature did adopt the Model Code's definition of criminal homicide they did not continue to follow this pattern in defining the offenses of murder. To the contrary, as indicated, the Legislature saw fit to follow the 1939 Penal Code approach. We are therefore satisfied that there was no intent to change the then existing case law on the subject.

Thus, as we indicated in *Yuknavich,* where the statutory law does not define murder itself, we must look to our case law for that purpose. As has been stated the cases are legion which provide that a participant in a robbery, such as appellant, "acts with the kind of culpability" which is necessary to hold her responsible in a death caused by a co-defendant acting in furtherance of the conspiratorial scheme.

Judgment of sentence is affirmed.

JONES, former C. J., did not participate in the decision of this case.

POMEROY and MANDERINO, JJ., concurred in the result.

ROBERTS, J., filed a concurring opinion.

ROBERTS, Justice, concurring.

I agree with the majority that the Crimes Code [1] does not prohibit finding a defendant guilty of felony-murder when the fatal blow was delivered by a co-felon. I do not believe, however, that the changes made in the Crimes Code impose no limits on the scope of the felony-murder doctrine.

Under the Crimes Code, a killing cannot constitute murder unless it is a criminal homicide:

"A *criminal homicide* constitutes murder of the first degree [now murder of the second degree] if the actor is engaged in or is an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempt-

the law of murder but rather elected to affirm the existing law in this Commonwealth on that subject.

1. 18 Pa.C.S.A. §§ 101 et seq. (1973).

ing to commit robbery, rape, or deviate sexual intercourse by force or threat of force, arson, burglary, or kidnapping."

18 Pa. C.S.A. § 2502 (1973) (emphasis added). Criminal homicide in turn is defined as a killing in which the defendant "intentionally, knowingly, recklessly or negligently causes the death of another human being." Id. § 2501(a). As section 302 of the Crimes Code[2] makes clear, a defendant cannot be guilty of a criminal homicide unless he either intends or knows that death will result, or is reckless or criminally negligent about the possibility that death will result. Thus, conviction for murder on a felony-murder theory requires that a defendant must at least be negligent as to the possibility that death will result.

In fact, however, this requirement modifies prior law little, if at all. Properly interpreted, the requirements that the underlying felony be inherently dangerous to human life, that the killing be in furtherance of the underlying felony, and of causation, should serve to prevent criminal homicide convictions for non-negligent killings. For example, it is clear in this case that appellant has been at least criminally negligent about the possibility that the robbery would result in the loss of human life. Accordingly, I concur in the result.