J-S68024-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DEANDRE PAYTON JONES, JR. | : | |
| | : | |
| Appellant | : | No. 359 WDA 2018 |

Appeal from the Judgment of Sentence September 8, 2017
In the Court of Common Pleas of Indiana County Criminal Division at
No(s): CP-32-CR-0000621-2016

BEFORE:   SHOGAN, J., DUBOW, J., and STEVENS*, P.J.E.

MEMORANDUM BY DUBOW, J.:                     **FILED MARCH 08, 2019**

Appellant Deandre Payton Jones, Jr., appeals from the Judgment of Sentence imposed after a jury found him guilty of Second-Degree Murder, Robbery, and Conspiracy to Commit Robbery.   Appellant challenges the sufficiency and weight of the evidence, and asserts a ***Brady***[1] violation.  We affirm.

We glean the following facts from the certified record, particularly from the notes of testimony from Appellant's trial.  ***See*** N.T. Trial, 8/22-8/25/17. On September 29, 2014, Michael Eades, Jr., drove Appellant, Kevin King, and Stanley Boynton from Altoona to Tyron Howard's apartment in Blairsville. Eades told the others that he was going to pick up some cash that Howard

_____

[1] ***Brady v. Maryland***, 373 U.S. 83 (1963).

_____

*   Former Justice specially assigned to the Superior Court.

("the Victim") owed to him in connection with their work in the illicit drug trade.[2] While *en route*, Eades told them all to turn off their cell phones.

When they arrived at the Victim's apartment, Eades told the Victim he was there for the money he owed him and proceeded to gather up money that was laying around the living room in banded bundles. An argument ensued between Eades and the Victim, and King pulled out a gun, pointing it at the Victim while demanding that he give Eades the money he owed him. The Victim gave Eades money that was under the cushion of a chair. King and Eades then directed Appellant and Boynton to get cash from the bedroom. Appellant found the money in the bedroom, put it in a bag, and handed the bag to Boynton. Boynton and Appellant then returned to the living room, and Eades directed Appellant to tie up the Victim with an extension cord while the men gathered more money from around the living room and put it into the bag. After Appellant tied the Victim's ankles with an extension cord and his wrists with a black USB cable, as ordered by Eades, he tried to remove his DNA from the cords with his saliva.

Soon thereafter, King grabbed a sword from the Victim's collection held in a bin in the living room and began stabbing the Victim. Boynton ran out of the house with the bag of money and jumped into the back of the car. Eades

_____

[2] King and Eades are brothers; Appellant is King's cousin and was visiting from Baltimore at the time. N.T. Trial, 8/22/17, at 36. Eades and the Victim were allegedly best friends. *Id*. at 301.

directed Appellant to go find Boynton, and King and Eades continued stabbing the Victim.[3]

King and Eades shortly thereafter returned to Eades's vehicle where Appellant and Boynton were waiting. They all drove back to Altoona, stopping at a Sheetz in Ebensburg along the way. When they got to King's apartment, Eades and King split up the money, giving Appellant $10,000.

Police officers found the Victim's body three days later lying on his living room floor. An electric cord bound the Victim's feet, another cord bound his hands, and a sock was in his mouth. The body had nearly 40 stab wounds, and a sword impaled the Victim's skull to the floor.

After extensive investigation by the Pennsylvania State Police, the Commonwealth charged the four men with murder and other crimes. With respect to Appellant, the Commonwealth charged him with Second-Degree Murder, Conspiracy to Commit Criminal Homicide, Robbery, and Conspiracy to Commit Robbery.

On August 21, 2017, Appellant proceeded to a jury trial,[4] where the Commonwealth presented testimony from numerous police officers,

_____

[3] There were discrepancies in the testimony as to whether the Victim was tied up before or after Appellant went to the bedroom, and where Appellant was located when the stabbing began. It was within the province of the jury to reconcile those discrepancies in order to reach its verdict. *Commonwealth v. Reynolds*, 835 A.2d 720, 726 (Pa. Super. 2003).

[4] Eades had a separate trial in June 2017; King and Boynton pled guilty. King testified at Eades' trial as a Commonwealth witness.

investigators, forensic experts, and Boynton. *See* N.T. Trial, 8/22/17-8/23/17, at 34-240.[5] The Commonwealth did not call King as a witness.

Appellant called King to testify on his behalf. *See* N.T. at 242-80. King testified that Appellant was like a little brother to him. He stated that Appellant was not involved in the illicit drug trade and did not know that a robbery was going to happen that night. *See id*. at 245-47. King stated that once the trouble started, he knew Appellant "didn't want to be there," and that Appellant "was uncomfortable" when Eades directed him to tie up the Victim. *Id*. at 251. He also stated that Eades gave money to Appellant as "shut up, don't say nothing money." *Id*. at 256. King also testified that as part of his plea agreement, he agreed to testify for the Commonwealth against Eades, but not against Appellant. *Id*. at 259. Appellant's counsel did not question King about any other aspect of his plea agreement.

Appellant testified on his own behalf. He stated that he has known Eades and King his entire life and that they could be violent men, so he was afraid of them when they got upset. He stated that he did not know during the drive to Blairsville that they were going to rob the Victim. He stated that because he was afraid of Eades, he turned off his cell phone, gathered money in the Victim's apartment, and tied up the Victim when Eades told him to do so. He also said that, although he heard commotion in the living room while he was collecting money from the bedroom, he did not see the Victim getting

---

[5] The notes of testimony from the multi-day trial are included in one volume.

stabbed before Eades told him to leave the house to find Boynton. *See* N.T., 8/23/17, at 289-303. He stated that he took the money from Eades after the Robbery because Eades and King gave it to him for making him be part of the Robbery. *See id*. at 306. Appellant also testified that he did not know about the Victim's death until three days later when he ran into Eades's mother in a mall in Baltimore. *Id*. at 308-09.

The jury found Appellant guilty of Second-Degree Murder, Robbery, and Conspiracy to Commit Robbery,[6] and not guilty of Conspiracy to Commit Murder. On September 8, 2017, the court sentenced Appellant to a term of incarceration of life without parole.

Appellant filed a Post-Sentence Motion alleging, *inter alia*, a **Brady** violation involving King's plea bargain, and challenging the weight and sufficiency of the evidence, and certain evidentiary rulings. On October 10, 2017, the court held a hearing on Appellant's Motion, at which Corp. Michael Zimmerman of the Pennsylvania State Police testified that he conducted interviews with all four men and that when King told him about what happened at the Victim's apartment, "we basically came to the agreement that like a murder 2 or life would be off the table" for King. N.T. Post-Sentence Motion, 10/10/17, at 8-9. Corp. Zimmerman further testified that on or about June 6, 2017, he attended a meeting with King, the Indiana County District Attorney, and others, in which the Commonwealth offered King an open plea

---

[6] 18 Pa.C.S. §§ 2502(b), 3701(a)(1), 903 and 3701(a)(1), respectively.

of Third-Degree Murder in exchange for his testimony against the others. *Id*. at 13. Corp. Zimmerman testified that he informed King at that time that the standard range provided in the sentencing guidelines was "14 to something or 17 to something" and that "17 is still better than life." *Id*. at 12-13. He also indicated that at no time did the Commonwealth promise to make a sentencing recommendation to the court and that the Commonwealth informed King that there was no guarantee with respect to any sentence. *Id*. at 13-14.[7]

The court admitted a portion of the notes of testimony from Eades' trial in which King testified, as a Commonwealth witness, that neither the District Attorney's office nor members of the State Police ever promised him any particular sentence for his Third-Degree Murder plea. *Id*. at 18. He stated that he discussed possible sentences with his attorney but he knew that the open plea meant that the sentencing was left up to the judge. *Id*. The court denied Appellant's Post-Sentence Motion.

Appellant timely appealed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.[8]

Appellant presents the following questions for our review:

---

[7] After Appellant's trial, King was sentenced to a term of 10-20 years' incarceration based on a recommendation the Commonwealth made after Appellant's trial. N.T. Post-Sentence at 33-34; Trial Ct. Op., dated 2/12/18, at 1-2.

[8] The trial court submitted its Opinion denying Appellant's Post-Sentence Motion as its Rule 1925(a) Opinion.

1.  Did the trial court err in concluding that there was no **Brady** violation for failure of the Commonwealth to disclose terms of the plea agreement and/or other benefits to cooperating co-defendant, Kevin King[?][9]

2.  Did the trial court err by not granting counsel's motion for mistrial, after a Commonwealth witness commented about the Appellant being incarcerated in the Cambria County Jail[?]

3.  Did the trial court err by overruling defense counsel's objection and permitting the Commonwealth to show the murder weapon, still covered with the victim's blood, to the jury[?]

4.  Did the trial court err in finding that the evidence was sufficient to support convictions of Murder in the Second Degree, Robbery, and Conspiracy to Commit Robbery[?]

5.  Did the trial court err in finding the verdict was not against the weight of the evidence, thus did the trial court err in denying defense counsel's request for a new trial[?]

Appellant's Brief at 6.

## Issue 1

Appellant avers that he "was denied due process of law when the Prosecution withheld information about a favorable sentence being provided to cooperating co-defendant, Kevin King." **Id**. at 14.  After citing the 14th Amendment to the U.S. Constitution and quoting from **Brady**, **supra**,

---

[9] Following the filing of his Brief, Appellant filed a Motion for Remand Based Upon After-Discovered Evidence, with an averment signed by Kevin King stating that the Commonwealth offered him a "sentence of 10-20 years in exchange for my testimony in the Deandre Jones case."  **See** Motion for Remand, Exh. A.  He also stated: "I knew that I would be getting a sentence of 10-20, as long as I said what they wanted me to say." **Id**.  For the reasons discussed *infra*, we deny Appellant's Motion for Remand filed December 19, 2018.

Appellant notes that, although he was aware before trial that King entered an open guilty plea to Third-Degree Murder in exchange for his testimony against his co-defendants, the Commonwealth did not tell him that it would recommend that King receive a sentence of 10 to 20 years' incarceration. Appellant asserts that because "the Commonwealth has a duty to disclose any and all benefits and considerations given to a cooperating witness[,]" the Commonwealth's failure to do so violated Appellant's due process rights. *Id*. at 16.

"[T]o establish a *Brady* violation, an appellant must prove three elements: (1) the evidence at issue is favorable to the accused, either because it is exculpatory or because it impeaches; (2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice ensued." *Commonwealth v. Weiss*, 81 A.3d 767, 783 (Pa. 2013) (citations omitted).

> However, the mere possibility that an item of undisclosed information *might* have helped the defense, or might have affected the outcome of the trial, does not establish materiality in the constitutional sense. Rather, evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Commonwealth v. Willis,* 46 A.3d 648, 656 (Pa. 2012) (emphasis in original; citation, internal quotation marks, and brackets omitted).

Appellant fails to provide any argument to support his averment that he was denied due process of law. He presents a selective and incomplete

recitation of the circumstances of King's sentencing, but he does not attempt to review the ***Brady*** factors as applied to his case.

"When briefing the various issues that have been preserved, it is an appellant's duty to present arguments that are sufficiently developed for our review." ***Commonwealth v. Hardy***, 918 A.2d 766, 771 (Pa. Super. 2007) (citation omitted). "The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities." ***Hardy***, ***supra*** at 771 (citation omitted)*;* Pa.R.A.P. 2119(a), (b), (c). "Citations to authorities must articulate the principles for which they are cited." ***Hardy***, ***supra*** at 771 (citing Pa.R.A.P. 2119(b)). "This Court will not act as counsel and will not develop arguments on behalf of an appellant." ***Hardy***, ***supra*** at 771 (citation omitted). "[W]hen defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived." ***Id.;*** Pa.R.A.P. 2101.

Here, Appellant does not attempt to analyze the ***Brady*** factors relative to his case. He does not explain how the alleged evidence would have been favorable to him, how he suffered prejudice because of the Commonwealth's alleged omission, and how King's sentence pertained to Appellant's guilt or punishment so as to affect the outcome of his case. Significantly, Appellant fails to acknowledge that King testified on behalf of Appellant at Appellant's

trial.[10]   Appellant's failure to develop and analyze his ***Brady*** claim impedes our ability to conduct meaningful review.  Accordingly, this issue is waived.[11]

## Issue 2

Appellant next asserts that the trial court erred in failing to grant his motion for a mistrial because he suffered prejudice when Commonwealth witness Boynton testified at trial that he was in Cambria County Jail with Appellant.  Appellant's Brief at 16.

Appellant fails to cite to the transcript of the notes of testimony from his trial.  An appellant's failure to cite to the record constitutes waiver.

_____

[10]   King testified for the defense that Appellant "lacked criminal sophistication and that his role in the case was minimal and Appellant had no intent to harm the Victim[.]"  Trial Ct. Op. at 3.  Appellant does not attempt to develop an argument that the allegedly withheld evidence would have been used to impeach King's credibility.

[11] Moreover, even if Appellant had not waived this claim, we would conclude it is without merit.  Our review of the record supports the following analysis presented by the trial court:

> [T]he [c]ourt finds that there was not an agreement but rather it was anticipated that a standard range sentence would place King in the 10[-] to 20-year range that he was requesting.  It was only after counsel discovered their error as to King's prior record score that the recommendation of a mitigated sentence was made.  As a result, an agreement that a recommendation be made did not come into existence until after [Appellant's] trial took place.

Trial Ct. Op., dated 2/12/18, at 4.  ***See also*** N.T. Post-Sentence Motion, 10/10/17, at 72 (District Attorney Patrick Dougherty testifying regarding the first time the Commonwealth even considered making a sentencing recommendation for King was after Appellant's trial).

> Failing to provide . . . citation to the record represents serious deviations from the briefing requirements of the Rules of Appellate Procedure. Because such an omission impedes on our ability to address the issue on appeal, an issue that is not properly briefed in this manner is considered waived.

*Commonwealth v. Gould*, 912 A.2d 869, 873 (Pa. Super. 2006)(quotation marks and citation omitted). *See also* Pa.R.A.P. 2119(c) (providing: "If reference is made to the pleadings, evidence, charge, opinion or order, or any other matter appearing in the record, the argument must set forth, in immediate connection therewith, or in a footnote thereto, a reference to the place in the record where the matter referred to appears[.]").

Appellant's failure to cite to the notes of testimony to direct our attention to where in the trial the challenged testimony occurred and when he requested a mistrial "impedes our ability to address the issue on appeal." *Gould*, *supra* at 873. Accordingly, Appellant's second issue is waived.

**Issue 3**

Appellant next asserts that the court erred in overruling his objection to the Commonwealth showing the murder weapon to the jury after the jury had just seen a photograph of the weapon. Appellant's Brief at 18. Again, Appellant fails to cite to the Notes of Testimony from his trial. Accordingly, this issue is waived. *See* Pa.R.A.P. 2119(c), (d), (e); *Gould*, *supra*.

**Issue 4**

Appellant next challenges the sufficiency of the evidence, stating that the "Commonwealth did not prove beyond a reasonable doubt every element of each crime for which the Appellant was found guilty." Appellant's Brief at 19. He states that the Commonwealth did not prove that he was a "partner[] in the commission of the crime of Robbery," and "there was insufficient evidence that Appellant acted with malice." *Id*. Accordingly, he avers, there was insufficient evidence "to prove accomplice liability," and the malice needed to support the Second-Degree Murder conviction. *Id*. at 20, 23.

We review a challenge to the sufficiency of the evidence under the following precepts:

> Whether sufficient evidence exists to support the verdict is a question of law; our standard of review is *de novo* and our scope of review is plenary. In assessing Appellant's sufficiency challenge, we must determine whether viewing all the evidence admitted at trial in the light most favorable to the Commonwealth, there is sufficient evidence to enable the fact–finder to find every element of the crime beyond a reasonable doubt. The evidence need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented.

***Commonwealth v. Hutchison***, 164 A.3d 494, 497 (Pa. Super. 2017) (internal citations, quotation marks, and brackets omitted), *appeal denied*, 176 A.3d 231 (Pa. 2017).

Second-Degree Murder, also known as Felony Murder, is defined as a criminal homicide "committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony." 18 Pa.C.S. § 2502(b). For the

purposes of Second-Degree murder, a "felony" is defined as, *inter alia*, Robbery. 18 Pa.C.S. § 2502(d).

Our Crimes Code provides that a person is guilty of Robbery, a felony in the first degree, if in the course of committing a theft, he "threatens another with or intentionally puts him in fear of immediate serious bodily injury." 18 Pa.C.S. § 3701(a)(1)(ii). The evidence is sufficient to convict a defendant of Robbery under this section if the evidence demonstrates aggressive actions that threatened the victim's safety. **Commonwealth v. Valentine**, 101 A.3d 801, 807 (Pa. Super. 2014); **Commonwealth v. Jannett**, 58 A.3d 818, 821-22 (Pa. Super. 2012); **Commonwealth v. Hansley**, 24 A.3d 410, 416 (Pa. Super. 2011).

In a series of conclusory sentences, Appellant contends that the Commonwealth proved neither conspiracy nor accomplice liability with respect to Appellant's participation in the crimes. Appellant's Brief at 20-21.

The Pennsylvania Crimes Code defines conspiracy as follows:

A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S. § 903(a).

To prove conspiracy, the Commonwealth must demonstrate that: (1) the defendant entered into an agreement with another to commit or aid in the commission of a crime; (2) he shared the criminal intent with that other person; and (3) an overt act was committed in furtherance of the conspiracy. ***Commonwealth v. Devine***, 26 A.3d 1139, 1147 (Pa. Super. 2011). "This overt act need not be committed by the defendant; it need only be committed by a co-conspirator." ***Commonwealth v. Murphy***, 795 A.2d 1025, 1038 (Pa. Super. 2002) (citation omitted).

An accomplice is also legally accountable for the conduct of the other person involved in committing the crimes. 18 Pa.C.S. § 306(b)(3). The Crimes Code defines an accomplice as follows:

> A person is an accomplice of another person in the commission of an offense if:
>
> (1) with the intent of promoting or facilitating the commission of the offense, he:
>
>   (i) solicits such other person to commit it; or
>
>   (ii) aids or agrees or attempts to aid such other person in planning or committing it; or
>
> (2) his conduct is expressly declared by law to establish his complicity.

18 Pa.C.S.A. § 306(c).

"Both requirements may be established wholly by circumstantial evidence. Only the least degree of concert or collusion in the commission of the offense is sufficient to sustain a finding of responsibility as an accomplice.

- 14 -

No agreement is required, only aid." ***Commonwealth v. Kimbrough***, 872 A.2d 1244, 1251 (Pa. Super. 2005) (*en banc*) (citations and quotation marks omitted). "[P]roof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities." ***Id.*** at 1253–54 (citation omitted).

With respect to the *mens rea* element which, Appellant contends, the Commonwealth failed to prove, our Supreme Court has observed the following:

> . . . In adjudging a felony-murder, it is to be remembered at all times that the thing which is imputed to a felon for a killing incidental to his felony is malice and not the act of killing. This doctrine may be applicable whenever a death occurs during the perpetration of or an attempt to perpetrate a felony, whether or not the accused actually inflicted the mortal wound. Restated, the felony-murder concept was a judgment by our courts at common law that the willingness to participate in conduct amounting to a felony exhibited the recklessness of consequences, the callous disregard and the hardness of heart which evidenced a malicious state of mind. This reasoning was applicable to the actual slayer as well as to those who participated in the felony with him.

***Commonwealth v. Allen***, 379 A.2d 1335, 1336–37 (Pa. 1977) (footnotes omitted) (quoting ***Commonwealth v. Redline***, 137 A.2d 472, 476 (Pa. 1958)).

Appellant argues that "there was insufficient evidence to prove an agreement to commit Robbery between Appellant and the Co-Defendants, which was necessary to prove accomplice liability." Appellant's Brief at 20. Appellant conflates the concepts of conspiracy and accomplice liability. As

noted above, "no agreement is required, only aid" in order to prove accomplice liability. **Kimbrough**, **supra** at 1251.

Moreover, Appellant's argument is essentially that the jury should have believed him. **See id**. at 22 (where Appellant supports his argument by noting that he and Boynton testified at trial that they "had no idea the victim was going to be robbed," that Appellant "did not have a weapon," and that Appellant "participated only out of duress and fear.").[12] Such an argument asks this Court to reweigh the evidence and make our own credibility determinations. This we will not do. **See Commonwealth v. Hawkins**, 701 A.2d 492, 501 (Pa. 1997) (the credibility of witnesses is "solely for the [fact finder] to determine"); **see also Commonwealth v. Dougherty**, 860 A.2d 31, 36 (Pa. Super. 2004) ("This Court cannot substitute its judgment for that of the [fact finder] on issues of credibility." )(citations omitted).

Moreover, "[i]t is the function of the [fact finder] to evaluate evidence adduced at trial to reach a determination as to the facts, and where the verdict is based on substantial, if conflicting evidence, it is conclusive on appeal." **Commonwealth v. Reynolds**, 835 A.2d 720, 726 (Pa. Super. 2003) (citation omitted). **See also Commonwealth v. Brown**, 52 A.3d 1139, 1165–66 (Pa. 2012) (observing that "questions regarding the reliability of the evidence received at trial [are] within the province of the finder-of-fact to resolve, and

---

[12] Again, Appellant fails to cite to the record when referencing this testimony. **See** Pa.R.A.P. 2119(c) (requiring citation to the record).

[appellate courts] will not, on sufficiency review, disturb the finder-of-fact's resolution except in those exceptional instances . . . where the evidence is so patently unreliable that the jury was forced to engage in surmise and conjecture in arriving at a verdict based upon that evidence." ).

After reviewing the record in the light most favorable to the Commonwealth, we conclude that there was sufficient evidence to enable the jury to find every element of the crimes charged beyond a reasonable doubt. Appellant knew that Eades and King were involved in the drug trade, agreed to turn off his cell phone on the way to the crime scene, understood that they were going to Blairsville to collect drug money, and gathered up the money and bound the victim as directed by Eades and King. There was, thus, sufficient evidence to support Appellant's Robbery and Conspiracy to Commit Robbery convictions. Further, because of his involvement in the Robbery, Appellant was liable as an accomplice to the Victim's murder. Accordingly, Appellant's challenge to the sufficiency of the evidence supporting his convictions warrants no relief.

**Issue 5**

In this final issue, Appellant's avers that the verdict was against the weight of the evidence. **See** Appellant's Brief at 25. He contends that because he did not know about the plan to commit the Robbery and participated only because he was under duress, "punishing Appellant for something he never intended, did not agree to do, and in fact did not even know about and could

not have foreseen is a shocking injustice and a new trial should be granted to avoid such manifest injustice." *Id*. at 26.

When considering challenges to the weight of the evidence, we apply the following precepts. "The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none[,] or some of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Talbert*, 129 A.3d 536, 545 (Pa. Super. 2015) (quotation marks and citation omitted). Resolving contradictory testimony and questions of credibility are matters for the finder of fact. *Commonwealth v. Hopkins*, 747 A.2d 910, 917 (Pa. Super. 2000). It is well-settled that we cannot substitute our judgment for that of the trier of fact. *Talbert, supra* at 546.

Moreover, appellate review of a weight claim is a review of the trial court's exercise of discretion in denying the weight challenge raised in the post-sentence motion; this court does not review the underlying question of whether the verdict is against the weight of the evidence. *See id.* at 545-46. "Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is [or is not] against the weight of the evidence." *Id.* at 546. "One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was

not against the weight of the evidence and that a new trial should be granted in the interest of justice." ***Id.***

Furthermore, "in order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." ***Id***. (internal quotation marks and citation omitted). As our Supreme Court has made clear, reversal is only appropriate "where the facts and inferences disclose a **palpable abuse of discretion**[.]" ***Commonwealth v. Morales***, 91 A.3d 80, 91 (Pa. 2014) (citations omitted; emphasis in original).

"[A] true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." ***Commonwealth v. Thompson***, 106 A.3d 742, 758 (Pa. Super. 2014). For that reason, the trial court need not view the evidence in the light most favorable to the verdict winner, and may instead use its discretion in concluding whether the verdict was against the weight of the evidence. ***Commonwealth v. Widmer***, 744 A.2d 745, 751 and n.3 (Pa. 2000).

Appellant essentially asks us to reassess the credibility determination made by the jury and reweigh the testimony and evidence presented at trial. As noted above, we cannot and will not do so. After a thorough review of the certified record, the briefs of the parties, the applicable law, and the trial court's Opinion, we conclude that there is no merit to Appellant's challenge to the weight of the evidence. The trial court carefully evaluated the record and

the evidence in reviewing Appellant's weight claim. *See* Trial Court Opinion, dated 2/12/18, at 10. Our review of the record indicates that the evidence is not tenuous, vague, or uncertain, and the verdict was not so contrary to the evidence as to shock the court's conscience.

We discern no abuse of discretion in the trial court's denial of Appellant's weight claim. Accordingly, Appellant is not entitled to relief on his weight claim.

## Conclusion

For the foregoing reasons, we deny Appellant's Motion for Remand and affirm the Judgment of Sentence.

Motion for Remand denied. Judgment of Sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/8/2019