J-A15008-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| HIRAM RAMOS | : | |
| | : | |
| Appellant | : | No. 1977 EDA 2019 |

Appeal from the Judgment of Sentence Entered June 11, 2019
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0007236-2016

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| HIRAM RAMOS | : | |
| | : | |
| Appellant | : | No. 1978 EDA 2019 |

Appeal from the Judgment of Sentence Entered June 11, 2019
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0006862-2017

BEFORE:   LAZARUS, J., KING, J., and STRASSBURGER, J.[*]

MEMORANDUM BY LAZARUS, J.:                **FILED OCTOBER 05, 2020**

Hiram Ramos appeals from the judgments of sentence,[1] imposed by the

Honorable Wendy G. Rothstein, following a jury trial.  Ramos challenges the

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] This appeal is a consolidation of 1977 EDA 2019 and 1978 EDA 2019.  Ramos' application for consolidation was granted on February 7, 2020.  **See** Order Granting Application for Consolidation, 2/7/20.  **See also** Pa.R.A.P. 513; Pa.R.A.P. 2138.

discretionary aspects of his sentence, arguing that the sentence of 701 to 1402 months is clearly unreasonable and manifestly excessive. Upon careful review, we affirm.

In the summer of 2016, Ramos engaged in a spree of burglaries, involving thirty-one homes in multiple municipalities. Ramos usually committed the break-ins at night, stealing electronics, cash, and other valuables from inside the homes. Often, Ramos broke in while the victims were asleep. Over the course of two months, Ramos stole thousands of dollars' worth of items. Ramos never encountered his victims while committing the burglaries; in fact, none realized what had occurred until the following morning.

On September 12, 2018 a jury trial was held, after which Ramos was found guilty of eleven counts of burglary – person present,[2] two counts each of burglary – no person present,[3] attempted burglary – person present,[4] and attempted burglary – no person present,[5] seven counts of attempted criminal

---

[2] 18 Pa.C.S. § 3502(a)(1).

[3] 18 Pa.C.S. § 3502(a)(2).

[4] 18 Pa.C.S. § 901(a).

[5] 18 Pa.C.S. § 901(a).

trespass,[6] five counts of criminal trespass – break into,[7] eight counts of criminal trespass – enter structure,[8] thirteen counts of theft by unlawful taking or disposition,[9] thirty-one counts of loitering and prowling at nighttime,[10] and one count of criminal conspiracy.[11].

Following Ramos' sentencing hearing, the court imposed a sentence of 701 to 1402 months (58.41 to 116.83 years). At the time of sentencing, Ramos was 34 years old. The court sentenced Ramos within the standard range of the guidelines on each count, but ran thirty-one of the counts consecutively.

On June 18, 2019, Ramos filed a post-sentence motion, requesting the court to reconsider his rehabilitative needs and arguing his sentence amounted to a *de facto* life sentence and was excessive for the crimes he committed and inconsistent with the sentencing factors set forth in 42 Pa. C. S. § 9721. Ramos' post-sentence motion was denied. Therefore, Ramos timely filed a notice of appeal. Both Ramos and the trial court complied with Rule 1925(b).

---

[6] 18 Pa.C.S. § 901(a).

[7] 18 Pa.C.S. § 3503(a)(1)(ii).

[8] 18 Pa.C.S. § 3503(a)(1)(i).

[9] 18 Pa.C.S. § 3921(a).

[10] 18 Pa.C.S. § 5506.

[11] 18 Pa.C.S. § 903(a).

On appeal, Ramos raises the following questions for review:

> 1. Is [Ramos'] aggregate sentence of 701-1402 months (or 58.41 to 116.83 years), a *de facto* life sentence for crimes in which no one was physically injured, clearly unreasonable and manifestly excessive pursuant to 42 Pa.C.S. § 9781(c)(2)[?]
>
> 2. Is [Ramos'] aggregate sentence of 701-1402 months (or 58.41 to 116.83 years), a *de facto* life sentence, disproportionate pursuant to 42 Pa.C.S. § 9721(b) when the sentencing court did not consider [his] rehabilitative needs?

Appellant's Brief, at 2.

Ramos challenges the discretionary aspects of his sentence, alleging that a sentence of 58.41 to 116.83 years is unreasonable and excessive. It is well settled that "[s]entencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." ***Commonwealth v. Mouzon****,* 828 A.2d 1126, 1128 (Pa. Super. 2003). An abuse of discretion is "more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias[,] or ill-will." ***Commonwealth v. Walls***, 926 A.2d 957, 961 (Pa. 2007) (internal citation omitted). When exercising its discretion, the sentencing court "may determine whether, given the facts of a particular case, a sentence should run consecutive to or concurrent with another sentence being imposed." ***Commonwealth v. Wright***, 832 A.2d 1104, 1107 (Pa. Super. 2003) (internal citation omitted); ***Mouzon***, ***supra*** at 1130.

Before we may reach the merits of Ramos' appeal, we must first determine whether Ramos' issues were properly preserved and invoke the Jurisdiction of this court. When challenging the discretionary aspects of a sentence, there is no absolute right to appeal. 42 Pa.C.S. § 9781(b). An appellant challenging the discretionary aspects of his sentence must invoke jurisdiction by satisfying a four part test: (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief includes a 2119(f) statement; and (4) whether there is a substantial question. ***Commonwealth v. Allen***, 24 A.3d 1058, 1064 (Pa. Super. 2011). A substantial question exists "only when the appellant advances a colorable argument" that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms that underlie the sentencing process. ***Commonwealth v. Phillips***, 946 A.2d 103, 112 (Pa. Super. 2008).

Ramos raised his discretionary aspects of sentencing claims in his post-sentence motion. ***See*** Post-Sentence Motion, 6/18/19, at 3-5. Thus, he has preserved them for appeal. Moreover, Ramos has included a Rule 2119(f) statement, in which he asserts the court violated sections 9721(b) and 9781(c)(2) of the Sentencing Code. Appellant's Brief, at 14. Ramos further asserts that the trial court did not consider his rehabilitative needs, which caused his sentence to be clearly unreasonable and excessive. ***Id.*** We, therefore, turn to whether Ramos has presented a substantial question that

the sentence from which he appeals is not appropriate under the sentencing code.

Under section 9721, the sentencing court is statutorily required to consider the following factors when imposing a sentence: the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. 42 Pa.C.S. § 9721(b). Under section 9781(c)(2), a sentence within the sentencing guidelines may be vacated if the case involves circumstances where the application of the guidelines would be clearly unreasonable. 42 Pa.C.S. § 9781(c)(2).

Excessiveness claims based solely on the application of consecutive sentences generally do not raise a substantial question for review. ***Commonwealth v. Moury***, 992 A.2d 162, 171-72 (Pa. Super. 2010). Excessiveness claims raise a substantial question only in the most extreme circumstances, such as where the aggregate sentence is unduly harsh considering the nature of the crimes and the length of imprisonment. ***Id***. ***See also Commonwealth v. Dodge***, 77 A.3d 1263, 1270 (Pa. Super. 2013) (***Dodge IV***) (finding substantial question where "[t]he decision to sentence consecutively raises the aggregate sentence to, what appears on its face to be, an excessive level in light of the criminal conduct at issue in the case."); ***Commonwealth v. Coulverson***, 34 A.3d 135, 143 (Pa. Super. 2011). Moreover, this court has consistently held that "ordinarily a claim that the sentencing court failed to consider or accord proper weight to a specific

sentencing factor does not raise a substantial question." ***Commonwealth v. Berry***, 785 A.2d 994, 996 (Pa. Super. 2001). However, a claim of a manifestly excessive or clearly unreasonable sentence, combined with a claim that the court failed to consider all sentencing factors, can raise a substantial question. ***See Commonwealth v. Cartrette***, 83 A.3d 1030, 1042-43 (Pa. Super. 2013) (substantial question presented where appellant alleges sentence manifestly excessive because court did not consider all sentencing factors); ***Dodge IV***, ***supra*** at 1273 (substantial question found where appellant alleges clearly unreasonable sentence because court did not consider rehabilitative needs).

Here, Ramos' unreasonableness claim is paired with a claim that the court failed to consider a statutory sentencing factor – his rehabilitative needs. ***See*** 42 Pa.C.S. § 9721(b); ***see also Commonwealth v. Devers***, 546 A.2d 12, 13 (Pa. 1988) (sentencing court has broad discretion to choose from range of permissible sentences, provided choices are consistent with protection of public, gravity of offense, and rehabilitative needs of defendant). Ramos, therefore, has raised a substantial question for review on both claims, and is entitled to review on the merits.

Ramos argues that the trial court is required to "justif[y] its imposition of a life sentence by indicating that [Ramos] was incorrigible or that a life sentence was necessary because no amount of rehabilitation could ever be successful[.]" Appellant's Brief, at 18. We disagree. That is not the standard; the sentencing court is not required to make a finding that a defendant is

incorrigible before imposing a lengthy sentence. As our Supreme Court stated in **Devers**:

> In order to dispel any lingering doubt as to our intention of engaging in an effort of legal purification, we state clearly that *sentencers are under no compulsion to employ checklists or any extended or systematic definitions of their punishment procedure*. Having been fully informed by the pre-sentence report, the sentencing court's discretion should not be disturbed.

**Devers**, **supra** at 18 (emphasis added). **See also Commonwealth v. Feucht**, 955 A.2d 377, 383 (Pa. Super. 2008) ("The court is not required to parrot the words of the Sentencing Code, stating every factor that must be considered under section 9721(b)."). The court's consideration of the section 9721 sentencing factors can be express or implicit. **Walls**, **supra** at 964. The sentencing court is under no obligation to expressly describe how an appellant's rehabilitative needs were served by his sentence or how that factor was balanced against the other sentencing factors. **See Commonwealth v. Hunzer**, 868 A.2d 498, 514 (Pa. Super. 2005).

Here, the record reflects that the sentencing court was aware of Ramos' rehabilitative needs and took those needs into account when imposing sentence. At the start of the sentencing hearing, the court stated that it was "in receipt of and ha[d] reviewed the sentencing memorand[a] prepared by the Commonwealth and the defense, the PSI or the presentence investigation and report, and [it had] considered the sentencing guidelines." N.T. Sentencing Hearing, 6/11/19, at 9. "Where, as here, a pre-sentence report

exists, we presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Devers*, *supra* at 18. "A pre-sentence report constitutes the record and speaks for itself." *Id.* In circumstances where it can be demonstrated that the judge had any degree of awareness of the sentencing considerations, we will presume that the weighing process took place in a meaningful way. *Id.*

Before announcing Ramos' sentence, the court stated on the record that it had reviewed the above-mentioned documents and considered the protection of the public, the gravity of the offenses as they relate to the impact on the life of the victims and on the community, and the rehabilitative needs of the defendant. *See* 42 Pa.C.S. § 9721(b). The court explained:

> This is a sad day. There are no winners here. To your family, I do not doubt that to you he is a great dad and a partner. Unfortunately, your dad and partner engaged in an unacceptable course of conduct which involved home invasions and resulted in a jury convicting him of 82 charges. The saying is, a man's home is his castle. To paraphrase and make it politically correct for our times, a person's home is their castle. It means that no one has a right to enter someone's home without their permission. It is such an absolute right that citizens have a constitutional right against unreasonable searches and seizures as it applies to their home. It also means that people should feel safe in their home and be free from unwanted intrusions. When people go to sleep at night, they should feel safe in their homes.
>
> Mr. Ramos, you violated that sense of security when you broke into their homes. There is nothing more sacred than the sanctity and security of someone's home. You destroyed that.
>
> You were convicted of crimes involving 31 different homes and their occupants. These people will never rest easy again. You've

changed their lives forever. You've stolen their sense of security in addition to stealing material and personal items. While there were 31 homes, there were multiple victims living in those homes. For today's purposes, I am referring to the number of homes, 31, as the number of victims. Each of your 31 victims warrants jail time for your conduct. If I were to do otherwise, then you would get a volume discount for your multiple crimes. They are all victims. As a result, you should be sentenced for all of the crimes against them. Your conduct warrants consecutive sentences for each of the victims.

There is nothing redeeming about how you conducted yourself. You pose an immediate and substantial threat to the safety of the public. Your conduct warrants a lengthy period of incarceration in a state correctional facility. **In your PSI, despite being convicted by a jury, you showed no remorse and disputed the undisputable evidence.**

N.T. Sentencing Hearing, 6/11/19 at 35-36 (emphasis added).

Significantly, Ramos' PSI included considerable information on his personal history, including his rehabilitative needs. We, therefore, reject Ramos' assertion that the entirety of the sentencing court's remarks "revolve[d] around the gravity of the offense as it relates to the impact on the life of the victim and the community with no regard for the rehabilitative needs of the defendant." Appellant's Brief, at 18 (internal quotation marks and citation omitted). By referring to the PSI numerous times, the court made clear its implicit consideration of Ramos' rehabilitative needs.

Next, we examine Ramos' claim that his sentence is manifestly excessive and clearly unreasonable. When determining if a sentence is manifestly excessive, "the appellate court must give great weight to the sentencing court's discretion, as he or she is in the best position to measure factors such as the nature of the crime, the defendant's character, and the

- 10 -

defendant's display of remorse, defiance, or indifference." ***Mouzon***, ***supra*** at 1128 (quoting ***Commonwealth v. Ellis****,* 700 A.2d 948, 958 (Pa. Super. 1997)). When imposing sentence, the court has discretion to run each sentence concurrently or consecutively to other sentences being imposed. ***Id.*** at 1130. This court has also "expressed concern against running sentences concurrently by way of habit, lest criminals receive volume discounts for their separate criminal acts." ***Id.*** Here, Judge Rothstein echoed this concern in her statement preceding sentencing. ***See*** N.T. Sentencing Hearing, ***supra*** at 35-36.

After our review, we conclude that Ramos' sentence is not manifestly excessive. Ramos was found guilty of eighty-two separate charges, thirty of which merged for sentencing purposes. Of the charges that remained, the court imposed sentences at the bottom of the standard range. Ramos is consecutively serving one sentence for each of his thirty-one victims. Eleven of those are for loitering and prowling at nighttime, with a bottom range sentence of 1-2 months. The remaining twenty sentences, imposed for an array of more serious charges, were each also at the bottom of the standard range. The trial court's decision to run Ramos' sentences concurrently was within its discretion. ***Wright***, ***supra*** at 1107. Thus, we find the trial court's decision to run Ramos' standard-range sentences consecutively did not result in a manifestly excessive sentence.

We also conclude that Ramos' sentence is not clearly unreasonable. Section 9781 states that this Court shall vacate a sentence and remand to the sentencing court if it finds:

(1) the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously;

(2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable; or

(3) the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.

In all other cases the appellate court shall affirm the sentence imposed by the sentencing court.

42 Pa.C.S. § 9781. If an appellant is sentenced within the guidelines, we may reverse only if application of the guidelines is clearly unreasonable. *See Commonwealth v. Macias*, 968 A.2d 773, 777 (Pa. Super. 2009).

Here, Ramos was sentenced within the sentencing guidelines, thus we may only vacate the sentence if circumstances exist which make application of the guidelines clearly unreasonable. Our Supreme Court noted in *Walls* that the term "unreasonable" generally means "irrational" or "not guided by sound judgment". *Walls, supra* at 963 (citation omitted). The Court also stated that "rejection of a sentencing court's imposition of sentence on unreasonableness grounds [should] occur infrequently, whether it is above or below the guideline range." *Id.* at 964.

The reasonableness inquiry is a "fluid" one, based partially on the factors set forth in section 9781(d) of the Sentencing Code, which provides that when we review the record, we shall have regard for:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

*Commonwealth v. Dodge* (*Dodge II*), 957 A.2d 1198, 1200 (Pa. Super. 2008); 42 Pa.C.S. § 9781. A sentence can also be deemed unreasonable if the appellate court finds that it was imposed without express or implicit consideration of the section 9721 sentencing factors. *Walls*, *supra* at 964; *see also Coulverson*, *supra* at 150 (finding sentence clearly unreasonable because trial court did not consider all statutory factors). Since we have already established that the sentencing court appropriately considered section 9721, our inquiry will focus on the factors in section 9781 listed above.

It is well-established within our case law, having been expressly stated by the Pennsylvania Supreme Court, that "burglary is a crime of violence as a matter of law [and] first-degree burglary necessarily constitutes violent behavior in all contexts[.]" *Commonwealth v. Chester*, 101 A.3d 56, 64 (Pa. 2014). Here, the trial judge elaborated on the nature and circumstances of the offense in her opinion:

[Ramos] engaged in a serial burglary spree which spanned multiple municipalities. The majority of these burglaries occurred late at night while the occupants of these homes were sleeping inside. Many of the victims in this matter suffered not only the

> loss of material and personal items, but also had their sense of security shattered.

Trial Court Opinion, 12/16/19, at 13. As a result of this burglary spree, a jury convicted Ramos of eighty-two separate crimes against thirty-one households. And since the court considered each household as a singular entity, the actual number of individual victims is likely far higher. Additionally, the court discussed at the sentencing hearing why imposing consecutive sentences was appropriate.

Moreover, Judge Rothstein had the opportunity to observe Ramos and had the benefit of a PSI report. The PSI report, sentencing memoranda and testimony from Ramos and his family members provided the court with ample information on Ramos' personal history and characteristics. Of note, Ramos had a prior record score of 5. *See* Defense Sentencing Memorandum, 6/6/19, at 3. Further, Judge Rothstein noted that Ramos showed a lack of remorse and disputed undisputable evidence even after conviction. N.T. Sentencing Hearing, *supra*, at 36.

In short, the sentencing court complied with the requirements of section 9721(b). Thus, we can only reverse Ramos' sentence if it is clearly unreasonable pursuant to 42 Pa.C.S. § 9781(d). In light of the nature of the offenses, Ramos' background and characteristics, the findings upon which the sentence was based, consideration of the presentence investigation report, and the sentencing guidelines, we do not find that this sentence is clearly unreasonable. The record, as a whole, "reflects the court's reasons and its

meaningful consideration of the facts of the crime and the character of the offender." ***Commonwealth v. Malovich***, 903 A.2d 1247, 1253 (Pa.Super.2006). ***See Commonwealth v. Hoag***, 445 Pa. Super. 455, 665 A.2d 1212, 1214 (Pa. Super. 1995) (explaining that a defendant is not entitled to a "volume discount" for his or her crimes).

In response to our learned colleague's dissenting view, we point out that the circumstances underlying the defendant's crimes in ***Dodge*** do not inform our decision here. Dodge was convicted of 37 counts of receiving stolen property, the majority of which was costume jewelry of minimal value, and two counts of burglary. ***Dodge II***, ***supra*** at 1202. There, the court imposed consecutive standard range sentences on the 37 counts of receiving stolen property, resulting in an aggregate sentence of 51½ to 111 years of imprisonment; the court also imposed consecutive sentences on the two burglary convictions, which increased the aggregate sentence to 58½ to 124 years of imprisonment. The petty theft offenses in ***Dodge*** are clearly distinguishable from the thirteen burglary convictions here, in which Ramos victimized 31 people and stole property valued at over $15,000.00.

The dissent emphasizes the fact that the victims did not know that they were burglarized; some were "at home asleep when [Ramos] broke into their residences, and [] none of the crimes involved any encounters with any victims." Dissenting Memorandum, at 9. This is fortunate, but no consolation. Burglary is not a victimless crime; it is, as noted above, a crime of violence. ***See Commonwealth v. Pruitt***, 951 A.2d 307, 321 (Pa. 2008) ("the crime of

burglary has always been and continues to be viewed as a crime involving the use or threat of violence to the person.").  The trauma persists, despite the initial lack of awareness.  Here, eleven of Ramos' burglaries were in homes where the victims were present.  Whether present during the home invasion or not, one's sense of security is not easily, if ever, recovered.

In *Commonwealth v. Rolan*, 549 A.2d 553 (Pa. 1988), our Supreme Court stated:

> Grading a burglary as a felony of the first degree is totally consistent with the theory that the unprivileged entries into buildings and structures where people are likely to be found is a clear threat to their safety. We recognized this fact long ago when this Court, speaking through Mr. Justice Maxey (later Chief Justice) said: "Every burglar is a potential assassin and when his felonious purpose encounters human opposition *his intent to steal* becomes an *intent to kill* and any weapon he finds at hand becomes a weapon of murder." (emphasis in the original). *Commonwealth v. Le Grand*, 336 Pa. 511, 9 A.2d 896 (1939); *Commonwealth v. Redline*, 391 Pa. 486, 137 A.2d 472 (1958); *Commonwealth v. Moyer*, 357 Pa. 181, 53 A.2d 736 (1947); *Commonwealth v. Elliott*, 349 Pa. 488, 37 A.2d 582 (1944). Every robber or burglar knows when he attempts to commit his crime that he is inviting dangerous resistance. He also knows that a later act in the chain of events he inaugurates will be the use of deadly force against him on the part of his selected victim. *Moyer*; *Redline*. It is this threat of violence to persons that has prompted the Legislature into expanding the definition of burglary to include all those entries without privilege into places where people might be present.

*Id.* at 559.

Judge Rothstein did not credit Ramos for the fortuitous fact that his victims did not awaken or were not at home.  We will not intrude on her

discretion. ***Mouzon****, **supra*. Accordingly, we affirm the judgments of sentence.

Judgments of sentence affirmed.

Judge King joins this Memorandum.

Judge Strassburger files a Dissenting Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/5/20