## Commonwealth *v.* Alston, Appellant.

Argued April 27, 1973. Before Jones, C. J., Eagen, O'Brien, Roberts, Pomeroy, Nix and Manderino, JJ.

414

*William B. Moyer*, with him *William T. Renz*, for appellant.

*Stephen B. Harris*, First Assistant District Attorney, with him *Kenneth G. Biehn*, District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE NIX, March 26, 1974:

Appellant, Willie Patrick Alston, entered a plea of guilty to the charge of murder generally and after a degree of guilt hearing was adjudged guilty of murder in the first degree.[1] A sentence of life imprisonment was imposed. This direct appeal challenges the fixing of the degree at first degree, there is no question raised as to the validity of the plea. We now affirm.

We have consistently held that where a defendant is found guilty of first degree murder, following a plea of guilty to murder generally, we will on direct appeal entertain his assignments of errors relating to the degree of guilt hearing. *Commonwealth v. Riggins*, 452 Pa. 411, 305 A.2d 31 (1973); *Commonwealth v. Robinson*, 442 Pa. 512, 276 A. 2d 537 (1971) and *Commonwealth v. Stokes*, 426 Pa. 265, 268 n.5, 232 A.2d 193, 194 n.5 (1967). The evidence produced at the degree of guilt hearing established that appellant and Percy Johnson agreed on a date prior to the incident to commit a robbery of a branch office of the Philadelphia National Bank located in the Midway Shopping Center of Bristol Township, Bucks County. In preparation,

---

[1] A plea of guilt was also entered to an indictment charging armed robbery and a sentence of ten to twenty years was imposed. No appeal has been taken from the judgment of sentence entered under this indictment.

the appellant printed two notes to be handed to the tellers announcing their intention and procured a revolver with six cartridges from an acquaintance.[2] On March 29, 1972, the date of the robbery, appellant and Johnson were driven to the bank in a vehicle owned and operated by a friend, Robert Wilson. The automobile contained two additional passengers. Upon arriving at the bank, appellant and Johnson left the vehicle armed with the weapon procured by the appellant. After completing the intended robbery, the appellant and Johnson returned to the vehicle that had brought them to the scene and began their escape. They encountered an unmarked police vehicle containing the victim and his partner. After ordering the vehicle in which appellant was a passenger to stop, as Officer Stuckey left his vehicle and approached the vehicle of the appellant, he was shot and killed by appellant. At the time that Officer Stuckey was shot the muzzle of the weapon was approximately four feet from him and the bullet struck him in the chest.[3]

The factor that distinguishes first degree non-felony murder from murder in the second degree is the specific intent to kill. *Commonwealth v. Mosley*, 444 Pa. 134, 279 A.2d 174 (1971); *Commonwealth v. Hornberger*, 441 Pa. 57, 270 A.2d 195 (1970); *Commonwealth v. Ewing*, 439 Pa. 88, 264 A.2d 661 (1970); *Commonwealth v. Commander*, 436 Pa. 532, 260 A.2d 773 (1970). A specific intent to kill may be found from the inten-

---

[2] The notes stated: "Do as I say and nobody will get hurt. Don't look or say anything to anybody. Just take the money out of the cash drawer and put it in the bag and act natural. Don't try to set off an alarm because we will use our guns if we have to. Make it fast. You have 30 seconds."

[3] An autopsy established that the police officer had died as a result of a bullet wound which entered his body one inch from the midline of the sternum and exited in the left posterior axillary line, at the level of the seventh interspace.

tional use of a deadly weapon upon a vital part of the body. *Commonwealth v. Agie,* 449 Pa. 187, 296 A. 2d 741 (1972) ; *Commonwealth v. Hornberger,* 441 Pa. 57, 270 A.2d 195 (1970). The use of a deadly weapon directed at a vital organ of another human being justifies a factual presumption that the actor intended death unless the testimony contains additional evidence that would demonstrate a contrary intent. We do not find any evidence offered during the degree of guilt hearing that would suggest a contrary intent.

Appellant argues that he only fired in response to a shot fired apparently by the officers. The credible evidence offered during the hearing justifies a rejection of this version of the occurrence and a finding that appellant fired first.[4] However, assuming arguendo appellant's account that he fired after one of the officers had discharged their weapon it would not rebut the presumption that when he did fire his weapon, he intended to kill Officer Stuckey. Our law has never recognized any justification, excuse or mitigating circumstances for using deadly force which results in the death of another when responding to the force of one who is using reasonable force to apprehend a fleeing felon.

The psychiatric testimony offered by appellant was also of no avail. The theory that his act was instinctive and thus not a result of a specific design to kill was based upon the assumption that one of the officers had fired first. As noted above, the fact finder was more than justified in rejecting such a finding under the testimony that was presented. We are satisfied that

---

[4] In addition to the police witnesses who flatly contradicted the appellant's version that someone else fired first, the Commonwealth produced a clearly distintersted witness, Miss Antonelli, who arrived upon the scene of the shooting by chance and completely corroborated the police on this issue.

there was an ample basis for finding first degree murder under a non-felony murder theory.

It is equally apparent that there was overwhelming evidence to establish that this was a murder committed in the perpetration of a robbery. Act of June 24, 1939, P. L. 872, §701; as amended; 18 P.S. §4701. The entry of a plea of guilt to murder generally is sufficient in itself to sustain a conviction of second degree murder. *Commonwealth v. Stokes*, 426 Pa. 265, 232 A.2d 193 (1967); *Commonwealth ex rel. Bostic v. Cavell*, 424 Pa. 573, 227 A.2d 662 (1967). Where as here that murder occurred during the perpetration of or the attempt to perpetrate one of the enumerated felonies the crime is properly raised to murder in the first degree.

This jurisdiction has consistently adhered to the view that although the felony has been completed if the murder occurs during the attempted escape the commission of the felony still provides the aggravating circumstances to raise common law murder to murder of the first degree. "The killing had an ultimate relation and close connection with the felony: Commonwealth v. Kelly, 333 Pa. 280, 4 A.2d 805. The flight and escape were part of the crime: Commonwealth v. Lawrence, 282 Pa. 128, 127 A. 465; Commonwealth v. Doris, 287 Pa. 547, 135 A. 313; Commonwealth v. Kelly, 337 Pa. 171, 10 A.2d 431. There was no break in the chain of events between the felony and the killing: Commonwealth v. Doris, supra; Commonwealth v. Dillard, et al., 313 Pa. 420, 169 A. 138; Commonwealth v. Elliot, 349 Pa. 488, 37 A.2d 582." *Commonwealth v. Carey*, 368 Pa. 157, 162, 82 A.2d 240, 242 (1951).

The appellant and his confederates were en route from the scene seeking to reach a sanctuary away from those they knew would be in pursuit. They still had in their possession the fruits of their nefarious venture along with the weapon they had secured to assure its success. There was overwhelming evidence to cause

the finder of fact to believe that the shot that was fired, snuffing out the life of the deceased, was but a desperate effort to assure the successful completion of their criminal scheme. Thus it would be pure folly to conclude that the murder was separate and distinct from the initial robbery.

Lastly, appellant relying heavily on some of the language in *Commonwealth ex rel. Smith v. Myers,* 438 Pa. 218, 261 A.2d 550 (1970) urges that we abrogate the felony-murder doctrine. Here, however, we are concerned only with statutory felony murder. As stated earlier, the entry of a plea to murder generally admitted the presence of the malice aforethought to establish common law murder. The effect of the "statutory felony-murder rule merely serves to raise the degree of certain murders to first degree; it gives no aid to the determination of what constitutes murder in the first place." *Commonwealth ex rel. Smith v. Myers,* 438 Pa. at 224, 261 A.2d at 553. If appellant wishes to suggest some strong policy reason why a murder occurring during the perpetration of or the attempt to perpetrate a robbery should not be punished as murder of the first degree, these arguments should be addressed to the legislature and not the courts, since it is solely within the province of the legislature to make the requested change.

The judgment of sentence is affirmed.

Mr. Justice ROBERTS and Mr. Justice MANDERINO concur in the result.