413 A.2d 718

**COMMONWEALTH of Pennsylvania**

v.

**Robert L. MADISON, Appellant.**

Superior Court of Pennsylvania.

Submitted July 24, 1979.

Filed Oct. 26, 1979.

384

Gerald A. Stein, Philadelphia, for appellant.

Robert B. Lawler, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before MONTGOMERY, O'BRIEN and HONEYMAN, JJ.*

PER CURIAM:

Appellant was charged by information with Criminal Conspiracy, Possession of Instruments of Crime and Murder. As the Commonwealth refused to certify that the homicide rose no higher than second degree murder and the appellant requested to be tried non-jury, a court en banc was convened in accordance with Pa.R.Crim.P. Rule 353. Appellant was thereafter found guilty by a unanimous vote of the panel of first degree murder as well as the conspiracy and possession charges. Appellant filed post verdict motions nunc pro tunc with permission of the court. These motions were denied, and he was sentenced to a life term on the murder conviction and lesser terms on the nonhomicide charges.

On appeal, the following issues raised by appellant are preserved for our review: (1) whether the evidence established as a matter of law that appellant was guilty of voluntary manslaughter and not murder; (2) whether the evidence was sufficient to convict on the criminal conspiracy charge; (3) whether appellant knowingly, intelligently and

* Justice HENRY X. O'BRIEN of the Supreme Court of Pennsylvania and Judge ROBERT W. HONEYMAN of the Court of Common Pleas, Montgomery County, Pennsylvania, are sitting by designation.

voluntarily waived his right to a jury trial; and (4) whether the procedure set out in Rule 353 is unconstitutional.

The evidence below disclosed that appellant entered decedent's, Otis Castleberry's, luncheonette on December 8, 1976, to purchase food. A dispute arose as to the amount of change appellant received from the cashier, and Castleberry and Madison proceeded to engage in a heated argument which resulted in Castleberry producing a gun and ordering appellant from the store. Outside, Madison was joined by another individual, Tyrone Smith, and they set out on a brief drive in appellant's car. At some point, appellant parked the car, and Smith got out to relieve himself. When Smith returned to the car, he noticed a shotgun on the rear seat which had not previously been there. Madison then stated that he wanted to talk to Castleberry the same way decedent talked to him—with a gun in his face. The two men then drove back to the store, and entered. Madison was armed with the shotgun at his side, and Smith stood behind him. After additional mutual threats were exchanged between decedent and Madison, Castleberry reached for his gun, and appellant, while backing away, fired at the decedent and fled the store with Smith. The cause of death was established as a shotgun wound of the neck and chest. Both men were thereafter apprehended, and Smith pled guilty to Third Degree Murder, later testifying against appellant at trial.

■■■ Appellant first alleges that the factual scenario presented above, is sufficient, as a matter of law, to convict him of voluntary manslaughter only. In order to sustain a verdict of First Degree Murder, the evidence must establish that the defendant, with specific intent to kill, and absent legal excuse or justification, caused the death of another person. *Commonwealth v. Padgett*, 465 Pa. 1, 348 A.2d 87 (1975). The specific intent to kill may be found from the intentional use of a deadly weapon upon a vital part of the body. *Commonwealth v. Alston*, 458 Pa. 412, 317 A.2d 229 (1974).

■ It is uncontradicted in the instant case that appellant, following a heated argument with the decedent, returned to the scene of the argument a short time later armed with a loaded shotgun. He confronted decedent with the weapon, threatened him, and thereafter fired the shotgun at Castleberry which resulted in his death. No theory of self defense was established within the framework of the facts presented. The lower court chose to reject appellant's testimony as "not being credible or worthy of belief" and absent any abuse of discretion, we must accept their findings on matters of credibility.

■ Appellant next argues that the evidence was insufficient to convict him of criminal conspiracy. It is axiomatic that the essence of a criminal conspiracy is a common understanding, between two or more persons to do an unlawful act. *Commonwealth v. Minnich*, 236 Pa.Super. 285, 344 A.2d 525 (1975). A conviction can be sustained without direct or explicit proof of the agreement. The conduct of the parties and the totality of the circumstances surrounding their activities can support an inference that a conspiracy existed. *Commonwealth v. Ridgely*, 243 Pa.Super. 397, 365 A.2d 1283 (1976). In the instant case, appellant informed Smith of his intention to return to the store and confront the decedent with a gun. The two then drove back to the luncheonette, both entered the store together, and both fled and hid from the police for several days following the shooting. Based on these facts, we clearly find sufficient evidence to convict appellant of criminal conspiracy.

■ Appellant further alleges that his jury trial waiver was not knowing and voluntary because the procedures under Pa.R.Crim.P.: Rule 353, were not adequately explained to him during this colloquy. However, we do not agree with appellant's analysis of the jury waiver test. In determining whether a knowing and voluntary waiver has occurred, it is imperative that a defendant "understand the nature of the right he is waiving." *Commonwealth v. Carey*, 235 Pa.Super. 366, 340 A.2d 509, 510 (1975). The judge must ascertain, on the record, that the defendant

knew the essential ingredients of a jury trial which are necessary to understand the significance of the right he was waiving. These essential ingredients, basic to the concept of a jury trial, are the requirements that the jury be chosen from members of the community (a jury of one's peers), that the verdict be unanimous, and that the accused be allowed to participate in the selection of the jury panel.

*Commonwealth v. Williams*, 454 Pa. 368, 373, 312 A.2d 597, 600 (1973).

■ In other words, the important aspect of the voluntary waiver is that the defendant understand that which he is giving up. There is no prophylactic rule which requires that a defendant be *informed* of all the procedural steps which come into play after he knowingly and voluntarily relinquishes his right to be tried by a jury. Rule 353 only becomes applicable, once a determination has already been made that a knowing and voluntary waiver has occurred.

■ Instantly, appellant concedes that there has been compliance with the requirements of *Commonwealth v. Williams*, supra, and we therefore find that this is an indication that a knowing and voluntary waiver of a jury trial has occurred.

It is further important to note that appellant can assert no specific prejudice occasioned by the lower court's failure to inform him that under Rule 353, he could be found guilty of a lesser degree of murder by less than unanimous vote. There is not even an allegation made that had appellant known this, he would not have waived a jury trial, and in fact, appellant was thereafter found guilty by unanimous vote.

■ Appellant finally challenges the constitutionality of Rule 353 contending that a procedure which allows for the conviction of a crime by less than unanimous vote is violative of equal protection and due proces. Although we find this argument to be without merit, we also find that appellant lacks any standing to advance this challenge since he

was not, in fact, convicted of a lesser crime by less than a unanimous vote. Appellant cannot therefore allege a violation of due process and equal protection on this basis.

Based on the foregoing, the judgment of sentence is affirmed.