**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 24-2260

———————

COREY R. KENDIG,

Appellant

v.

NICHOLAS STOLAR

———————

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D. C. No. 1:21-cv-00326)
District Judge:  Honorable Cathy Bissoon

———————

Argued on June 24, 2025

Before: MONTGOMERY-REEVES, ROTH and
AMBRO, Circuit Judges

(Opinion filed: April 28, 2026)

Joel S. Sansone                    **(Argued)**
Law Offices of Joel Sansone
603 Stanwix Street
Two Gateway Center, Suite 1290
Pittsburgh, PA 15222

                Counsel for Appellant

Michael J. Scarinci                **(Argued)**
Office of Attorney General of Pennsylvania
Strawberry Square 15th Floor
Harrisburg, PA 17120

                Counsel for Appellees

_____

OPINION

_____


ROTH, Circuit Judge.

Corey Kendig was tried and acquitted by a jury for the shooting death of Jeremy Jones. Kendig sued Pennsylvania State Trooper Nicholas Stolar for arrest and imprisonment without probable cause, in violation of his Fourth Amendment rights, under 42 U.S.C. § 1983. The District Court granted summary judgment to Stolar, finding that he was entitled to qualified immunity. For the reasons stated below, we will affirm the District Court's order.

# I.

On October 13, 2020, at around 1:30 a.m., Jeremy Jones and his friends spotted Corey Kendig leaving Partner's Tavern, a strip club. One of Jones' friends confronted Kendig about an alleged scam involving the sale of a used truck to his father, another punched Kendig in the face, and a physical altercation ensued. At some point in the altercation, when Kendig was on the ground in a chokehold, Kendig discharged his firearm, shooting Jones in the stomach. Jones died shortly thereafter.

Kendig was taken into custody at the scene. After he was transported by ambulance to a medical center, he received treatment for "a closed head injury, and a severe injury to his right ear," and then returned to the police barracks.[1]

Trooper Nicholas Stolar was appointed as lead investigator on the case. Later in the morning of Jones' shooting, Stolar and other troopers interviewed several witnesses at the scene, conducted follow-up interviews at their residences or at the police barracks, viewed video footage of the incident, and filed several search warrant applications. At around 1:30 p.m. on October 13, Stolar filed charges against Kendig for criminal homicide,[2] aggravated assault,[3] and recklessly endangering another person.[4] Kendig was tried in August 2021, and the jury found him not guilty on all counts.

---

[1] Appx. 37 ¶¶ 15–19, 237 ¶ 18.
[2] 18 Pa. C.S. § 2501(a).
[3] 18 Pa. C.S. § 2702(a)(4).
[4] 18 Pa. C.S. § 2705.

## II.

On November 23, 2021, Kendig commenced this action under 42 U.S.C. § 1983 against Stolar and the Pennsylvania State Police in the United States District Court for the Western District of Pennsylvania. As relevant here, Kendig asserted claims for Fourth Amendment false arrest, false imprisonment, and malicious prosecution. Because facts supporting self-defense are not relevant to the probable cause determination, the District Court granted Stolar's motion for summary judgment, finding that Kendig had failed to show that he was arrested, detained, and charged without probable cause, and that Stolar was entitled to qualified immunity.

## III.

The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291.[5] We review de novo and may affirm the District Court's grant of summary judgment only if, viewing the facts in the light most favorable to the non-moving party, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[6]

As Stolar raised the qualified immunity defense at summary judgment, he is "'shielded from liability for civil damages insofar as [his] conduct does not violate clearly established statutory or constitutional rights of which a

---

[5] *Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020).
[6] Fed. R. Civ. P. 56(a); *see also Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788 (3d Cir. 2000).

reasonable person would have known.'"[7]  This divides our qualified immunity inquiry in two.  *First*, we consider whether Stolar violated an alleged statutory or constitutional right.  *Second*, we determine whether that right was "clearly established at the time of the challenged conduct."[8]

## IV.

Kendig's claims for false arrest, false imprisonment, and malicious prosecution share a common core:  the Fourth Amendment right to be free from arrest, detention, and charges without probable cause.[9]  Implicit in that right is an expectation that exculpatory facts negating probable cause are raised before the magistrate judge tasked with considering whether to

---

[7] *Orsatti v. N. J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

[8] *Ashcroft v. al–Kidd*, 563 U.S. 731, 735 (2011) (cleaned up).

[9] *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988) (False arrest requires the court to determine whether "the arresting officers had probable cause to believe the person arrested had committed the offense."); *Lozano v. New Jersey*, 9 F.4th 239, 246 (3d Cir. 2021) ("To succeed in a false imprisonment claim, a plaintiff must show that 'the police lack[ed] probable cause to make an arrest' and that the plaintiff was 'det[ained] pursuant to that arrest.'") (quoting *Harvard*, 973 F.3d at 202) (alterations in original); *Chiaverini v. City of Napoleon*, 602 U.S. 556, 558 (2024) ("To succeed on [a Fourth Amendment malicious prosecution claim], a plaintiff must show that a government official charged him without probable cause, leading to an unreasonable seizure of his person.").

authorize a warrant.[10] Kendig argues that facts indicating he shot Jones in self-defense are exculpatory to his charged crimes; thus, their omission from Stolar's affidavit tainted the neutral magistrate's probable cause determination. Stolar counters that his omission of these facts did not violate, much less implicate, Kendig's Fourth Amendment right because facts supporting an affirmative defense are categorically irrelevant to the probable cause inquiry.

The District Court agreed with Stolar, determining that even if the omitted facts supported self-defense, Stolar did not violate any constitutional right—let alone one that is clearly established—because self-defense cannot negate probable cause.[11] We agree with the court's conclusion that Stolar is entitled to qualified immunity, but part ways with its reasoning.

**A.**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures."[12] Seizures—whether through arrest or post-arrest detention—are reasonable "only if based on probable cause to

---

[10] *See Wilson v. Russo*, 212 F.3d 781, 790 (3d Cir. 2000) (holding a police officer cannot simply ignore or omit exculpatory evidence in an affidavit of probable cause supporting arrest).

[11] The District Court adopted the reasoning in *Rittacco v. Zelechowski*, No. 22-544, 2024 WL 2319505, at *12 (W.D. Pa. May 22, 2024), in coming to this conclusion, but provided little to no explanation specific to Kendig's own claims.

[12] *Manuel v. City of Joliet*, 580 U.S. 357, 364 (2017) (alterations in original).

6

believe that the individual has committed a crime."[13] The Fourth Amendment also requires either the issuance of a warrant before arrest or that "persons arrested without a warrant . . . promptly be brought before a neutral magistrate for a judicial determination of probable cause."[14]

To obtain an arrest warrant in either circumstance, an officer charging a suspect with a crime will submit an affidavit of probable cause to a neutral magistrate "containing a summary of the events that she believes give rise to probable cause."[15] The magistrate then "conducts his own independent review of the evidence to determine whether it does, in fact, establish probable cause."[16] This two-step process reflects "a 'practical compromise' between the rights of individuals and the realities of law enforcement."[17] It "allows officers to pursue leads zealously while also ensuring that an arrest warrant will issue only if 'a neutral and detached magistrate'

---

[13] *Bailey v. United States*, 568 U.S. 186, 192 (2013) (internal quotation marks omitted).

[14] *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 53 (1991). This is for good reason, as "[t]he point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." *Johnson v. United States*, 333 U.S. 10, 13–14 (1948).

[15] *Dempsey*, 834 F.3d at 469.

[16] *Id.*

[17] *McLaughlin*, 500 U.S. at 53.

agrees with the officer that probable cause exists."[18]  Where an officer "does not provide the neutral magistrate with an accurate affidavit of probable cause, the protection afforded by the magistrate's review is lost; the magistrate will be unable to assess the circumstances for probable cause because he will not know what those circumstances actually are."[19]  A Fourth Amendment violation therefore arises when a neutral magistrate's probable cause determination is predicated on an insufficient or untrue affidavit.[20]

Challenges to probable cause determinations by a neutral magistrate are different than those challenging an officer's warrantless arrest.  The officer's sole job in drafting the affidavit of probable cause is to provide the neutral decisionmaker with sufficient information for an independent

---

[18] *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 469 (3d Cir. 2016) (quoting *Wilson*, 212 F.3d at 787).

[19] *Id.*

[20] *See Franks v. Delaware*, 438 U.S. 154, 171 (1978) (a search or seizure pursuant to a warrant is unreasonable if the affidavit supporting the warrants contains deliberate "falsity or reckless disregard" for the truth).

probable cause determination. His job is not to make his own determinations.[21]

Probable cause eschews bright-line rules, so we have avoided setting forth specific categories of information that must be included in affidavits of probable cause, or those that are entirely irrelevant. Still, an officer must "include in the affidavit all information," within his or her knowledge, that "'any reasonable person would know that a judge would want to know' in making a probable cause determination."[22] Officers need not "tell all": they are not required to include "every potentially evocative detail that would interest a novelist or gossip,"[23] nor must they include every single piece

---

[21] *Illinois v. Gates*, 462 U.S. 213, 239 (1983) ("Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others."). In comparison, for warrantless arrests, an officer's own "on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of crime," *Gerstein v. Pugh*, 420 U.S. 103, 113–14 (1975), and the officer therefore considers the "totality of the circumstances" and in doing so, weighs evidence, credibility, and resolves conflicting information to make a probable cause determination. *Wright v. City of Philadelphia*, 409 F.3d 595, 603 (3d Cir. 2005), *abrogated on other grounds by Chiaverini v. City of Napoleon*, 602 U.S. 556 (2024).

[22] *Dempsey*, 834 F.3d at 469 (quoting *Reedy v. Evanson*, 615 F.3d 197, 213 (3d Cir. 2010)).

[23] *Wilson*, 212 F.3d at 787 (providing, as examples, "the witness blushed when I mentioned the gun, and blinked six

9

of evidence for every single point.[24]  However, they are "'not free to disregard plainly exculpatory evidence, even if substantial inculpatory evidence (standing by itself) suggests that probable cause exists.'"[25]

**B.**

Considering the above principles, our Court has left as an open question whether an affirmative defense is relevant to an affidavit of probable cause, and we have never imposed on officers a duty to make such a determination.  But as Judge Smith predicted in his concurrence to our non-precedential decision in *Mazuka v. Rice Township Police Department*,[26] there "[would] be a time when we take on this issue."  Ten years later, the time has come.

Before we can resolve this open question, we must first answer another:  whether evidence establishing an affirmative defense is meaningfully distinct from the plainly exculpatory evidence that, under our precedent, officers must include in probable cause affidavits.[27]  Stolar urges that we draw a rigid line between these two types of evidence, arguing that facts establishing an affirmative defense—in this case, self-

---

times while studying the photographic array.  I noticed his hand crept up to his lips (which were chapped) . . .").

[24] *Dempsey*, 834 F.3d at 474.

[25] *Andrews v. Scuilli*, 853 F.3d 690, 699 (3d Cir. 2017) (quoting *Dempsey*, 834 F.3d at 469).

[26] 655 F. App'x 892, 895 (3d Cir. 2016).

[27] *See Andrews*, 853 F.3d at 699 (noting that probable cause affidavits cannot omit plainly exculpatory evidence); *Dempsey*, 834 F.3d at 469 (same).

defense—are not plainly exculpatory, thereby destroying probable cause. But accepting that view would require us to hold that these facts are *never* relevant or material to a probable cause finding. We cannot do so because Pennsylvania law treats evidence of self-defense as exculpatory for all three offenses charged here—making Kendig's case an immediate exception to such a rule.[28]

Stolar charged Kendig with criminal homicide, aggravated assault, and recklessly endangering another person. In Pennsylvania, "[a] person is guilty of criminal homicide if he intentionally, knowingly, recklessly or negligently causes the death of another human being."[29] Criminal homicide includes murder, voluntary manslaughter, and involuntary manslaughter.[30] A person is guilty of aggravated assault if he, as charged here, "intentionally or knowingly causes bodily injury to another with a deadly weapon."[31] Lastly, a person is guilty of reckless endangerment if he "recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury."[32]

Self-defense is specifically enumerated in the preliminary provisions of Pennsylvania's criminal code, and applies to all offenses defined later in the title—including the

---

[28] We have previously declined to conclude that affirmative defenses are categorically irrelevant to a probable cause analysis. *See Holman v. City of York*, 564 F.3d 225, 231 (3d Cir. 2009).

[29] 18 Pa. C.S. § 2501(a).

[30] 18 Pa. C.S. § 2501(b).

[31] 18 Pa. C.S. § 2702(a)(4).

[32] 18 Pa. C.S. § 2705.

three crimes at issue here.[33]  More critically, the Pennsylvania Supreme Court has held that self-defense negates the mens rea elements for all three charged crimes,[34] and that if there is any evidence of self-defense in the record, the prosecution bears

---

[33] 18 Pa. C.S. § 505.

[34] *See In Int. of Smith*, 579 A.2d 889, 897 (Pa. Super. Ct. 1990) ("The self-defense finding negates all elements of a homicide because the use of deadly force is justified under the conditions which warrant a finding of self-defense."); *Commonwealth v. Fowlin*, 710 A.2d 1130, 1133 (Pa. 1998) (finding that "a claim of self-defense, if believed, negates any element of recklessness," and applying this finding to aggravated assault and reckless endangerment); *Commonwealth v. Flemings*, 652 A.2d 1282, 1285 (Pa. 1995) (self-defense negates mens rea for aggravated assault); *Commonwealth v. Hooks*, 2017 WL 6044282, at *3 (Pa. Super. Ct. Dec. 6, 2017) ("A fact-finder cannot find that a defendant justifiably acted in self-defense and simultaneously hold the defendant criminally liable for crimes involving recklessness."); *Commonwealth v. Hilbert*, 382 A.2d 724, 731 (Pa. 1978) ("We are of the opinion that 'self-defense' negates two elements of the common-law definition of murder:  unlawfulness and malice."); *Commonwealth v. Madison*, 413 A.2d 718, 720 (Pa. Super. Ct. 1979) ("In order to sustain a verdict of First Degree Murder, the evidence must establish that the defendant, with specific intent to kill, and absent legal excuse or justification, caused the death of another person.").

the burden to disprove self-defense at trial in the first instance.[35]

In *Harvard v. Cesnalis*, we considered the relevance of self-defense evidence to a defendant's mens rea for aggravated assault and reckless endangerment.[36]  There, we explained that "a juror could find that [the defendant's] decision to drive with [the victim] on the hood of his vehicle was a justifiable risk to protect himself and [his passenger] from [the victim's] abhorrent behavior."[37]  Ultimately, we held that information related to the victim's violent and aggressive behavior was material to probable cause and therefore belonged in the officer's affidavit of probable cause, as "such crucial information . . . creates serious doubts as to whether [the defendant] had the requisite mental state for the crimes

---

[35] *In Int. of Smith*, 579 A.2d at 896 ("When evidence at trial indicates the defense of self-defense, the burden is on the Commonwealth to prove beyond a reasonable doubt the killing was not in self-defense").  In the case of criminal homicide, even a partial showing of self-defense can differentiate a conviction for murder and a conviction for manslaughter. *See Commonwealth v. Light*, 326 A.2d 288, 294 (Pa. 1974).
[36] 973 F.3d 190, 200 (3d Cir. 2020).
[37] *Id.*

13

charged."[38]  As *Harvard* and the present case both illustrate, evidence establishing an affirmative defense may, depending on the offense at issue, overlap with exculpatory evidence for probable cause purposes.  Thus, the line between exculpatory facts and affirmative defense evidence is not always as rigid as Stolar suggests.

### C.

We need not stray far from the fundamentals of probable cause to envision an affirmative defense's relevance to a neutral magistrate's inquiry into charged crimes, but we stop short of finding that, in every case, evidence of an affirmative defense is exculpatory and thus vitiates probable cause.  Instead, with the understanding that facts establishing self-defense are exculpatory for the specific offenses at issue in this case, we now adopt as precedent the rule Judge Smith proposed in his *Mazuka* concurrence:

> [A]n affirmative defense [is] considered relevant to a probable cause determination only when a reasonable police officer . . . would "conclusively know" that the affirmative defense either negates the requisite mental state or excuses the offending conduct. . . . This may

---

[38] *Id.* at 204.  Our *Harvard* opinion did not expressly categorize the defendant's actions in taking a "justifiable risk" as an affirmative defense; however, the difference in semantics does not override the practical considerations we take from *Harvard*.  Like the offenses at issue here, the lack of a justification for the two crimes in *Harvard*—aggravated assault and reckless endangerment—was an enumerated aspect of the requisite mens rea.  *Id.* at 200.

14

happen when an element of the crime is clearly negated by the affirmative defense . . . or it may happen when all of the elements of the crime are present, but the affirmative defense is so clearly present that a reasonable arresting officer in that situation would know that it excused the offending conduct.[39]

To be sure, our holding reaches only the affirmative defense at issue in this case: self-defense. And our holding does not require officers who "conclusively know" that an affirmative defense exists to test the odds of that defense's success. Nor do we require that officers take the extra step of investigating or discovering facts that could establish a defense, "even if the defense is asserted [by the suspect] at the time of arrest."[40] Rather, we expect baseline awareness of the requisite elements for the offenses an officer seeks to charge, as well as an understanding that facts establishing an affirmative defense can negate a suspect's culpability depending on the crime, and like other exculpatory facts,

---

[39] *Mazuka*, 655 F. App'x at 895, 900.

[40] *Id.* at 900 (analogizing that "if a police officer arrives at the scene of a battery, and the arrestee claims self-defense, the officer does not need to investigate this claim before making the arrest"); *see also Painter v. Robertson,* 185 F.3d 557, 569 (6th Cir.1999) (holding that "a police officer is not required to inquire into facts and circumstances in an effort to discover if the suspect has an affirmative defense," but "[t]he officer may not ignore information which becomes available in the course of routine investigations[.]").

15

should be included in the affidavit of probable cause.[41]  Such a requirement is neither burdensome nor inconsistent with our decisions holding that officers have no responsibility to make complex legal determinations or resolve conflicting

[41] Other circuits also agree that known information relating to exculpatory defenses are relevant to the probable cause determination, even in the warrantless arrest context.  In *Jocks v. Tavernier*, the Second Circuit held that an officer may not "deliberately disregard facts known to him which establish justification" in the probable cause determination, but that the arresting officer is not required "to investigate exculpatory defenses offered by the person being arrested or to assess the credibility of unverified claims of justification before making an arrest."  316 F.3d 128, 136 (2d Cir. 2003).  The Sixth, Seventh, and Eleventh Circuits concur.  *See Est. of Dietrich v. Burrows*, 167 F.3d 1007, 1011–12 (6th Cir. 1999) (holding that officers lacked probable cause to arrest a suspect when they knew of "facts and circumstances that conclusively established, at the time of [the arrest], that the individual had an affirmative defense to the crime"); *Hodgkins ex rel. Hodgkins v. Peterson*, 355 F.3d 1048, 1061 (7th Cir. 2004) ("A statute's affirmative defenses do not compel the officer to look beyond what he already knows in order to decide whether one of the affirmative defenses applies," but an officer "may not ignore conclusively established evidence of the existence of an affirmative defense"); *Davis v. City of Apopka*, 78 F.4th 1326, 1336, 1343 (11th Cir. 2023), though the Sixth Circuit finds that arresting officers need not consider statute of limitation defenses.  *United States v. Baker*, 976 F.3d 636, 650 (6th Cir. 2020).  The Fifth Circuit has considered but not opined on the issue.  *Loftin v. City of Prentiss*, 33 F.4th 774, 780–81 (5th Cir. 2022).

16

evidence.[42]  This is because officers are tasked with *conveying* facts that are relevant to probable cause—not selecting those that establish it.  And while we once required nothing more, we now permit nothing less than full disclosure of the exculpatory facts an officer knows.

**D.**

Here, we find that the omission of known facts establishing Kendig's self-defense—which were exculpatory to elements of his specific charges—implicated Kendig's right to be free from charges and arrests devoid of probable cause. But we must not conflate our recognition of a protected right with a conclusion that the right is "clearly established" for qualified immunity purposes.

Nor could we in this case.  The qualified immunity inquiry limits us to an assessment of Stolar's conduct and whether a clearly established law placed him on notice that *his* actions violated Kendig's Fourth Amendment right.  Indeed, a right is only "clearly established" when, at the time of the alleged violation, its "contours . . . [are] sufficiently clear that a reasonable official would have understood" that his *particular* conduct "violates that right."[43]  This is a difficult standard to meet because to find that Stolar had sufficient

---

[42] *See, e.g.*, *Reedy v. Evanson*, 615 F.3d 197, 213 (3d Cir. 2010) (noting that the affidavit stage "ensures that a police officer does not 'make unilateral decisions about the materiality of information, or, after satisfying him or herself that probable cause exists, merely inform the magistrate or judge of inculpatory evidence.'" (quoting *Wilson*, 212 F.3d at 787)).
[43] *Ashcroft*, 563 U.S. at 735 (cleaned up).

notice, Kendig must be able to point to "existing precedent [that has] placed the . . . constitutional question beyond debate."[44] Specifically, he must be able to identify either "controlling authority"[45] within our Circuit or a "robust consensus of cases of persuasive authority" among the United States Courts of Appeals[46] that Stolar's conduct—omitting from a probable cause affidavit facts that support an affirmative defense—was unconstitutional.

Here, we have neither. Kendig offers examples from our three sister circuits who have found that affirmative defenses are relevant to probable cause; however, those courts limited their holdings—as we now do—to circumstances where the officer conclusively knew that an affirmative defense would exonerate or otherwise protect the suspect.[47] And without the benefit of clear guidance from our Court, the

---

[44] *Reichle v. Howards*, 566 U.S. 658, 664 (2012).

[45] *Sauers v. Borough of Nesquehoning*, 905 F.3d 711, 719 (3d Cir. 2018).

[46] *Dist. of Columbia v. Wesby*, 583 U.S. 48, 63 (2018).

[47] *See Hodgkins*, 355 F.3d at 1061 ("A police officer may not ignore conclusively established evidence of the existence of an affirmative defense, but the officer has no duty to investigate the validity of any defense.") (cleaned up); *Fridley v. Horrighs*, 291 F.3d 867, 873 (6th Cir. 2002) ("Even if the circumstances suggest that a suspect may have an affirmative defense, if a reasonable officer would not 'conclusively know' that the suspect is protected by the defense, then he is free to arrest the suspect provided there is probable cause to do so."); *Jocks v. Tavernier*, 316 F.3d 128, 135–36 (2d Cir. 2003) (stating that an officer may not "deliberately disregard facts known to him which establish justification").

district courts in this Circuit have consistently declined to require officers to include facts supporting affirmative defenses in affidavits of probable cause.[48] Though their reasoning does not resolve the issue before us, it underscores that no court in this jurisdiction has established such an obligation. In addition, the very fact that our sister circuits remain divided on whether and when to require officers to consider affirmative defenses at the probable cause stage reinforces the conclusion that the issue is not "beyond debate."[49]

We therefore cannot conclude that Stolar stepped outside any "clearly established" Fourth Amendment bounds when he drafted and submitted his affidavit of probable cause to the magistrate judge without including facts supporting Kendig's self-defense.

---

[48] *See Rittacco*, 2024 WL 2319505, at *9; *Gorman v. Bail*, 947 F. Supp. 2d 509, 523 (E.D. Pa. 2013) (finding that "claims of self-defense to an assault necessarily admit involvement in a violent altercation" and it "is inherently an issue that must be decided at trial, not by a police officer or a judge at a hearing to issue an arrest warrant."); *Berrios v. City of Philadelphia*, 96 F. Supp. 3d 523, 533 (E.D. Pa. 2015) (holding that an "affirmative defense would need to be a part of the statutory language in the elements of the crime at issue in order to be considered"); *Lue v. Borough of Collingdale*, No. 14-4497, 2015 WL 70931, at *5 (E.D. Pa. 2015) (holding that officers are "not required to resolve this inherently fact-bound defense [of self-defense] on the scene").
[49] *Reichle*, 566 U.S. at 664.

**E.**

Our holding here is straightforward: An officer is not required to evaluate the merits of every potential affirmative defense before filing charges or making an arrest. But when the officer gathers information bearing on the validity of the affirmative defense of self-defense, which he conclusively knows negates the requisite mental state of the charged offense or excuses the offending conduct, he must provide that information to the magistrate so that the probable cause determination remains with the magistrate judge, not the officer. In short, the Fourth Amendment does not allow an officer to open the window to this exculpatory defense only to draw the blinds before the magistrate can look through.

Accordingly, because a reasonable officer would have known that self-defense negates the requisite mens rea for homicide, aggravated assault, and recklessly endangering another person, Stolar's affidavit should have included all

known facts that supported Kendig's self-defense.[50]   This would have realistically involved considering to some degree Kendig's criminal intent in shooting Jones, but even so, Stolar only needed to comprehensively present—not draw legal conclusions from—those facts, allowing the magistrate judge

---

[50] Whether an officer knew of a potentially applicable affirmative defense at the time of filing charges or making an arrest is dependent on a review of facts and circumstances in the record.  *See Dietrich*, 167 F.3d at 1012.  Though we find that qualified immunity shields Stolar from liability, we note that viewing the record in the light most favorable to Kendig as the non-moving party, a reasonable jury could conclude that Stolar knew self-defense was an affirmative defense that would negate Kendig's charged offenses.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (setting forth summary judgment standard).  For example, Stolar admitted during a deposition that he believed Kendig's defense team would have a "very good case of self-defense" and that he did not withdraw the charges because, as he stated, "there was still a case to be made . . . it had to come out for the jury to decide that."  Appx. 267–68.

21

to consider them in making a well-informed decision to grant or deny the warrant application.[51]

Still, the law as it stood at the time of the incident provided Stolar no "clearly established" reason to believe that excluding this information from his affidavit of probable cause would violate Kendig's legal rights. He is therefore entitled to qualified immunity.

## V.

For the foregoing reasons, we will affirm the District Court's order.

---

[51] Such facts would have included that: two eyewitness statements reported Kendig was not the initial aggressor and was outnumbered during the altercation; the tavern manager had previously removed Jones for drunkenly starting fights with other patrons; the manager characterized Kendig as a "mellow dude" who had been "minding his own business;" Kendig retreated into the tavern after the shooting; and the manager told law enforcement he locked the tavern doors because Jones' friends were "pounding on [the] windows" and "trying to kill [Kendig]." Appx. 462–63.